**Cherry WRIGHT, Administratrix of the Estate of Irma Daniels, Appellant,**

v.

**Melvin DANIELS, Appellee.**

**No. 53013.**

Supreme Court of Iowa.

Jan. 14, 1969.

Gene L. Needles, Des Moines, for appellant.

Mitchell, Mitchell & Murray, Fort Dodge, for appellee.

SNELL, Justice.

Plaintiff, administratrix of the estate of Irma Daniels, deceased, appealed from the trial court's ruling sustaining defendant's motion to dismiss.

There is no factual dispute and the case is before us on an agreed record from which the following appears.

Irma Daniels, now deceased, and Melvin Daniels, defendant herein, were wife and husband.

Defendant inflicted grievous injuries on his wife resulting in her death. Defendant was tried for murder and convicted of manslaughter.

Plaintiff, as administratrix of the estate of Irma Daniels, sought recovery for her untimely death from her surviving husband.

Plaintiff's petition is in two separately numbered divisions. In Division I plaintiff alleged defendant's negligence was the proximate cause of decedent's untimely death.

Division II alleged defendant's assault was willful and malicious. Actual and exemplary damages were sought.

Defendant's motion to dismiss urged that under the doctrine of interspousal immunity there was no right or cause of action against defendant for willful or negligent torts committed during coverture.

On appeal plaintiff argues that statutory changes abrogate the rule in Iowa.

Whether or not the doctrine of interspousal immunity has been changed by statute in Iowa is the only issue before us.

I. Interspousal immunity in civil cases is of early common law origin. For willful injuries inflicted upon a spouse the guilty party might be subjected to the penalties prescribed by criminal law but was not subject to suit for damages.

Under the common law prior to Lord Campbell's Act causes of action in tort died with the injured party. Lord Campbell's Act created a new cause of action in favor of those who suffered financial loss resulting from the wrongful death.

Iowa was one of the early states to abolish the common law rule that civil liability of a tortfeasor died with the death of the injured party, but ours are survival statutes. See sections 611.20 and 611.22, Code of Iowa. These statutes do not create new causes of action. They preserve rights. In the case before us if no cause of action existed in favor of the deceased wife there was nothing preserved for her administratrix.

The right of civil remedy is not merged in a public offense. Section 611.21, Code of Iowa.

The developments in the law as to measure of damage and the right to recover for loss of consortium are not involved in the problem before us. The issue before us is the existence of a cause of action and not the measure of damage. Neither are the various married woman's statutes removing the common law disabilities of married women. Interspousal immunity applies to married status and does not depend on sex.

The issue here is confined to the statutory right of a husband or wife or a decedent's fiduciary, for the benefit of the decedent's estate, to maintain an action for tortious injuries inflicted during coverture. In Iowa as well as in many jurisdictions there has been no right to maintain such an action. None of the changes or developments mentioned invades the common law rule of interspousal immunity.

In the case before us plaintiff's petition alleged both negligence and willful injury. The trial court dismissed both claims. Logically, there would be far more reason to recognize a claim based on willful and malicious conduct than one based on mere negligence. If there was no cause of action under Division II of plaintiff's petition there could be no cause of action under Division I. We will accordingly direct our primary attention to cases where an intentional injury or malice was necessarily involved.

II. In Musselman v. Galligher, 32 Iowa 383, 384 (decided in 1871), after discussing common law disabilities this appears:

" * * * by our statutes the whole policy of the common law in respect to these disabilities of married women has been changed."

On page 387 it is held that a married woman's right to sue for injuries is a property right.

In Peters v. Peters, 42 Iowa 182 (decided in 1875) a wife claimed damages from her husband, from whom she was separated, for eleven distinct assaults and batteries. On page 183 this appears:

"Whilst it must be admitted that very radical changes have been made in the relation of husband and wife, still it seems to us that these changes do not yet reach

the extent of allowing either husband or wife to sue the other for a personal injury committed during coverture."

It was argued that under the Musselman case, supra, the right to maintain an action necessarily followed recognition of a property right. The court said that "this course of reasoning assumes the very thing to be established." (loc. cit. 184) The court rejected the argument and held that the wife could not sue her husband for a tort.

III. In Re Estate of Dolmage, 203 Iowa 231, 212 N.W. 553, decided in 1927, was a proceeding in probate for establishment of a claim for damages. The wife was shot and killed by her husband who then shot himself. The wife's administrator sued the husband's executor. The sole question before the court was: "May the wife maintain an action against her husband for personal injuries negligently or willfully inflicted upon her by her husband?" The court said that no such action would lie at common law. After analyzing the statutes the court held that an action would not lie thereunder.

IV. In Aldrich v. Tracy, 222 Iowa 84, 269 N.W. 30, decided in 1936, the wife was murdered through accomplices. Her husband was convicted of murder and hanged. The wife's administrator brought action for damages. After the husband's execution his executor was substituted as defendant. The court posed the question in these words:

"On the merits of the case itself, one proposition only is presented for our consideration: Did the plaintiff, as administrator of the estate of Mabel B. Tracy, deceased, have the right to maintain an action against her surviving husband, Reginald S. Tracy, because of the wrongful injuries and death inflicted upon Mabel B. Tracy by the defendant, Reginald S. Tracy?" (loc. cit. 86–87, loc. cit. 31 of 269 N.W.)

The court answered the question:

"If either a man or a woman be single, he or she may maintain such action against any other person; but if either a man or woman be married, he or she cannot maintain such an action against his or her wife or husband." (loc. cit. 91, loc. cit. 33 of 269 N.W.)

In the case before us it is neither claimed nor argued that these pronouncements have ever been overruled or modified in Iowa by judicial pronouncement. Reversal is sought solely on the claim of change by statute.

V. The soundness of the judicial doctrine of interspousal immunity is not argued.

In Newmire v. Maxwell, Iowa, 161 N.W.2d 74, 80, this appears:

██ "We are firmly committed to the rule that, * * * we may not reverse on grounds not stated or argued * * * [Citations]."

VI. The argument that interspousal immunity has been abrogated by statute is answered in Flogel v. Flogel, 257 Iowa 547, 133 N.W.2d 907, decided in 1965. In that case a wife sued her husband for damages resulting from his negligent operation of his automobile. Willfulness was not involved. The authorities, statutes and legislative intent were considered. We said:

"As so amended this statute has remained unchanged and is now Code section 613.11 I.C.A. The amendment gives no indication of any legislative intent to abrogate the interspousal immunity rule. If it is to be done we are committed to the proposition the legislature must do so in such clear language as to leave no doubt in the mind of anyone. We find no such expression in our present statutes." (loc. cit. 555, loc. cit. 912 of 133 N.W.2d)

VII. For a discussion as to the nature of wrongful death actions in Iowa see Cardamon v. Iowa Lutheran Hospital, 256

Iowa 506, 519, 520, 128 N.W.2d 226. We reaffirmed the rule that ours are survival statutes keeping alive a decedent's right to recover. The nature of our statute is important. See Division IX, infra.

VIII. In Schmitt v. Jenkins Truck Lines, Inc., 260 Iowa 556, 149 N.W.2d 789, we considered what is now a part of section 613.15, Code of 1966. We said that the amendment by the 61st General Assembly was to equalize the measure of damage for wrongful injury or death of a woman and those attendant upon the injury or death of a man. (loc. cit. 793) We also said:

"It remains we are committed to the rule that damages are essentially a part of the remedy.

"In the field of jurisprudence, the term 'right' connotes the capacity of asserting a legally enforceable claim." (loc. cit. 792)

In the case before us if plaintiff's decedent had no legally enforceable claim, plaintiff's action for damages cannot be maintained. Decedent's estate was the party plaintiff and nothing survived.

IX. In 22 Am.Jur.2d, Death § 80, this appears:

"Where the statutes removing the disabilities of married women do not give the wife a right to sue the husband for a personal tort, it has been held that an action cannot be maintained against him for causing her death by wrongful act. * * *

"It has been said that the disability of the wife to sue is personal to her and does not inhere in the tort itself, that an assault on her is wrongful even though she is under a personal disability to sue, and that the reasons for the rule of immunity between husband and wife do not exist where the husband kills the wife and thus destroys the marital relationship. Accordingly, it has been held that a daughter could recover against her stepfather for damages for killing her mother. It may be noted that this decision was made in a state in which the statutory beneficiary's cause of action is independent of that of the decedent. Also, with respect to the contention that because a wife could not maintain a tort action against her husband, a husband was not liable under the wrongful death statute for killing his wife, it has been held that at the time of the accrual of the new cause of action arising under the wrongful death statute, the relation of husband and wife had been terminated by the killing, and that therefore the rule concerning torts between husband and wife did not apply."

Under our survival statutes this argument would not apply.

An annotation in 28 A.L.R.2d 662 deals with the question whether an action may be maintained against a spouse or his estate for causing the death of the other spouse. On page 663 this appears:

"The split of the courts on the allowance of recovery against a spouse or his estate for causing the death of the other spouse appears to be grounded on the theory adopted in the particular jurisdiction as to the nature of an action brought under the wrongful death act, along with the view obtaining therein of the immunity of one spouse from suit by the other. Thus, where the right of action under the statute is considered to be merely derived from the person of the deceased, the statute being in the nature of a 'survival statute,' and there is a disability extant between the deceased and the tortfeasor, no recovery is allowed. If there is no disability as to suits between these parties, then recovery may be had even under this theory."

With interspousal immunity the law of Iowa nothing survived in favor of plaintiff or decedent's estate as such herein under our survival statutes.

X. Plaintiff, appellant, seeks some comfort from Kuhn v. Kuhn, 125 Iowa 449, 101 N.W. 151. That case was decided in 1904 under section 3386, Code of 1897. Appellant argues that under the Kuhn case the defendant herein, Melvin Daniels, would

be allowed his distributive share in his wife's estate. The statute under which the Kuhn case was decided was amended by the 29th General Assembly. The amendment is now a part of section 633.535, Code of 1966. This statute provides:

"Feloniously causing death. No person who feloniously takes or causes or procures another to take the life of another shall inherit from such person, *or receive any interest in the estate of the decedent as surviving spouse,* or take by devise or legacy from him, any portion of his estate." (Emphasis added to indicate amendment)

Appellant's conclusion drawn from the Kuhn case is not the law under our present statute.

XI. As said in the Flogel case, Division VI supra, we find nothing in our statutes indicating legislative disapproval of interspousal immunity as the law of our State.

The case is

Affirmed.

GARFIELD, C. J., and LARSON and RAWLINGS, JJ., concur.

MOORE, STUART, and LeGRAND, JJ., concur in the result.

BECKER and MASON, JJ., dissent.

BECKER, Justice (dissenting).

It would be difficult to find a case more clearly pointing to the need for modification of the common-law principle of interspousal immunity. It is not necessary to abolish the principle entirely in order to afford plaintiff her day in court. Nor is it necessary to disturb the holding of Flogel v. Flogel, 257 Iowa 547, 133 N.W.2d 907. There the spouses were both living and married to each other when the action was commenced.

Plaintiff's petition alleged: "On or about the 25th day of November, 1966, at the aforesaid place the defendant violently as-

saulted plaintiff's decedent and wrongfully struck her about the head and face, causing extensive and grievous injuries resulting in her untimely death." For the purpose of this appeal the statement must be taken as true.

I. Plaintiff predicates his arguments for reversal on statutory grounds alone; i. e., he argues newly amended section 613.15, Code, 1966 abolishes interspousal immunity in Iowa and further that his conception of the proper interpretation of section 611.21 also abolishes interspousal immunity but acknowledges such an interpretation has never been heretofore urged upon this court. We reject the propositions urging abolishment of interspousal immunity doctrine in Iowa on statutory grounds and I must agree.

Plaintiff, perhaps out of sheer frustration, fails to argue that the doctrine of interspousal immunity, as a common-law doctrine, should be modified or abolished because it no longer has validity in the mid-20th century setting. The pleadings are broad enough to consider such an argument. The trial court obviously considered the matter and stated it was not particularly in sympathy with the rule but it could not be changed at the district court level.

In upholding the trial court the majority notes the failure of plaintiff to attack the common-law principle as it applies to this case. But in arriving at its conclusion the majority nevertheless reexamines the doctrine and gives it new vitality by bestowing new approval.

I agree we should not decide this case on a point not argued. But, where, as here, the question is important we should not perpetuate bad law simply because a party has failed to argue a point that might well convince a majority of the court.

An order setting the matter for rebriefing and reargument can be entered by this court. The area for reargument can be delineated specifically. Here the questions which should be reargued are whether interspousal immunity, as a common-law doc-

trine, should be modified or abrogated (1) where the injury complained of is willful; (2) where the marriage has been terminated, and (3) where both willful injury and termination of the marriage by death are alleged.

In this case both the issues raised and the trial court's treatment of them would make such a procedure proper. Other appellate courts use such orders for special arguments regularly.[1] The United States Supreme Court is authority for such technique. One of the notable recent cases decided by that court is Baker v. Carr, 366 U.S. 907, 81 S.Ct. 1082, (final decision 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663) which was decided only after specific order for reargument.

Absent such reargument, I submit we should still proceed to consider this case on its merits on the question of modification of the interspousal immunity doctrine under the facts here presented. The parties may, if they wish (and we allow), reargue the advisability of such modification on rehearing. We should not give new vigor to the full rigid orthodoxy of interspousal immunity where the alleged facts are as outrageous as they are here.

II. We hold, in this case, that no matter how malicious or willful the injury of one spouse to another the courts of this state will not afford compensatory relief to the injured party even though the marriage relationship has terminated. This result obtains because of rigid adherence to a feudalistic concept we not only will not change but cannot bring ourselves to ameliorate.

Support for modification or abrogation of the doctrine of interspousal immunity may easily be found if we look to decisions of our sister states; or if we look at the analyses provided by eminent students of the subject; or if we examine, even casually the social and economic history of the

Anglo-American system. The state of Wisconsin has allowed interspousal tort actions since 1926 in both willful and negligent tort situations. The Supreme Court of Wisconsin should be in a particularly good position to assess the impact of the change in the rule. Goller v. White, 20 Wis.2d 402, 122 N.W.2d 193, 196: "We can now look back on more than thirty-five years' experience in the matter of spouses suing each other in negligence cases. This experience causes us to doubt that the rule of Wait v. Pierce, [191 Wis. 202, 209 N.W. 475] supra, has tended to promote family discord."

None of the dire consequences often predicted, if the rule of interspousal immunity is abandoned, have developed in Wisconsin.

III. Before considering the merits of the question, one must review again the doctrine of stare decisis and the excuse that if change in this judge-made rule is to be made it should be made by the legislature.

When this court decided to abrogate the rule of charitable immunity, it was able to say in Haynes v. Presbyterian Hospital, 241 Iowa 1269, 1272, 45 N.W.2d 151, 153: "Public policy simply means that policy recognized by the state in determining what acts are unlawful or undesirable, as being injurious to the public or contrary to the public good. It is not quiescent but active. A policy adopted today as being in the public good, unlike the Ten Commandments, is not necessarily an ever-enduring thing. As times and prospectives change, so changes the policy. * * *."

Other well-known quotations could be supplied, each of which urges the rule of stare decisis be used to provide stability and predictability but not to cling to an outworn rule, the basis of which has long disappeared into antiquity.

Justice Schaefer's remark in 34 Chicago Law Review 3, 24, Precedent and Policy, put the matter quite clearly in the framework of modern government:

---

1. There is no danger such a technique will unduly increase our case load. The order for reargument initiates with this court and is controlled by it.

"Precedent speaks for the past; policy for the present and the future. The goal which we seek is a blend which takes into account in due proportion the wisdom of the past and the needs of the present. Two agencies of government are responsible for the proper blend, but each has other responsibilities as well. The legislature must deal with the ever increasing details of governmental operations. *It has little time and little taste for the job of keeping the common law current.* The courts are busy with the adjudication of individual controversies. Inertia and the innate conservatism of lawyers and the law work against judicial change." (Emphasis supplied.)

IV. Turning to the need to change the interspousal immunity doctrine, so much has been written so well on the subject that it is difficult to select from strong authorities. A fine bibliography is supplied by Justice Souris as an appendix to Mosier v. Carney, infra.

Reference to Prosser, Law of Torts, Third Ed., section 116, p. 880 helps in synthesizing the historic background: "It is perhaps idle to speculate at this late date as to how far the historical basis of these rules is a mixture of the Bible and mediaeval metaphysics, the position of the father of the family in Roman law, the natural law concept of the family as an informal unit of government with the physically stronger person at the head, or the property law of feudalism.

"A combination of all these incidents made it impossible to maintain a tort action between husband and wife. * * *

"All this state of affairs belonged to a social order which has been dead for more than a century. * * *

"The courts which follow this majority view have buttressed their conclusion by inventing new arguments, not found in the early cases, for denying the remedy. Apart from stare decisis or judicial inertia, and the policy of strict construction of statutes changing the common law, it has been said that each spouse has remedy enough in the criminal and divorce laws—which obviously is untrue, since neither compensates for the damage done, or covers all the torts that may be committed. Stress has been laid upon the danger of fictitious and fraudulent claims, on the very dubious assumption that a wife's love for her husband is such that she is more likely to bring a false suit against him than a genuine one; and likewise the possibility of trivial actions for minor annoyances, which might well be taken care of by finding consent to all ordinary frictions of wedlock—or at least assumption of risk! The chief reason relied upon by all these courts, however, is that personal tort actions between husband and wife would disrupt and destroy the peace and harmony of the home, which is against the policy of the law. This is on the bald theory that after a husband has beaten his wife, there is a state of peace and harmony left to be disturbed; and that if she is sufficiently injured or angry to sue him for it, she will be soothed and deterred from reprisals by denying her the legal remedy—and this even though she has left him or divorced him for that very ground, and although the same courts refuse to find any disruption of domestic tranquility if she sues him for a tort to her property, or brings a criminal prosecution against him. If this reasoning appeals to the reader, let him by all means adopt it."

The same conclusion is reached in I Harper and Jones, The Law of Torts (1956), section 8.10 pp. 645–46: "The rule denying recovery has been applied literally and blindly in many cases where the reason for the rule could not possibly apply inasmuch as there was no home to disrupt and no domestic harmony to disturb. The divorce cases are typical examples. So, too, are cases in which the wife's administrator seeks to recover for her wrongful death. This rule has been applied even when the wife was murdered by her husband and where the wife's administrator sued the husband's administrator.

"But a strong and probably increasing minority view permits the wife to sue her husband for such harms, especially if they are intended wrongs. A few liberal decisions have permitted the action for the husband's negligence. This result seems eminently desirable. The metaphysical and practical reasons which prevented such actions at common law are no longer applicable. The danger to the family peace and tranquillity here, as in the case of suits by an infant against his parent, has been grossly overemphasized." See also Clark, Domestic Relations, section 9.1 (1968).

V. Numerous states have either repudiated the interspousal immunity doctrine or ameliorated it.

Mosier v. Carney, 376 Mich. 532, 138 N.W.2d 343, 344, a 1965 Michigan case, is one of the most recent cases to consider the problem of interspousal immunity, Souris, J., speaking for the court said: "At the outset we note that the felt need for re-examination of the common law defense of interspousal tort immunity has not been confined to Michigan. Indeed, at least 32 jurisdictions either have completely, or at least in certain fact situations abolished the defense. A sampling of such cases is collected in the appendix which follows this opinion. We note also that the common-law doctrine has received virtually universal excoriation from the legal scholars who have given consideration to it. See the selective bibliography included in the appendix."

The excellent appendix notes five classifications of cases where interspousal tort action is allowed, pages 355–56–57–58: "(1) Those in which the courts have permitted interspousal suits in general; (2) Those which permit interspousal suits when the marital relation has been or is in the process of being dissolved or permit suits against a third party even though the suit is predicated upon a spouse's negligence; (3) Those which permit suits for antenuptial torts; (4) Those which anomalously permit wives but not husbands to sue; and (5) in New York, interspousal tort suits are authorized by statute, but not if the defendant is insured unless the policy so states."

It will be noted Justice Souris carried only three of his seven brethren in full concurrence. But Justice Smith's full concurrence in the result limits his position in only one respect:

"I wish it to be understood, then, that in concurring in the holding of Justice Souris' opinion, I am not voting for the abolition of all interspousal tort immunity in Michigan, but for the specific result in the cases before us. * * *

"What we decide today, although somewhat less than a modest first step, is not earth shaking. It is sound beginning into a realm like no other—the family. It is best that we proceed from here with caution."

Because of the facts giving rise to the opinion, the Michigan case goes much further than it is necessary for us to go here. Yet Justice Souris' opinion is sound, as is that of Justice Smith in his special concurrence. We need only make a modest start to condition the interspousal immunity doctrine to life in the mid-20th century. But the start should be made.

VI. It serves no useful purpose to extend this dissent with additional authorities pointing to the conclusion that an injured spouse should be able to sue the marital wrongdoer at least where the injury was willful and this right should survive in the personal representative where the injury was so grievous as to cause death. This is the strongest possible type of case for modification of the interspousal immunity doctrine. The change could be limited to the facts of this case, i. e., willful tort which causes death. The propriety of further change of the principle in other less compelling situations could and should be left to case by case consideration for policy determination in connection with the individual circumstances shown. The common law and the public are best served when

courts are willing to take a fresh look at old principles and from time to time acknowledge that new circumstances require modifications, at least on a case by case basis.

For a start we ought to be able to concur in the expression of the North Carolina Supreme Court, contained in Crowell v. Crowell, 180 N.C. 516, 105 S.E. 206, 210 (1920) when it said:

"It must be remembered that there is not, and never has been, any statute in England or this state declaring that 'husband and wife are one, and he is that one.' It was an inference drawn by courts in a barbarous age, based on the wife being a chattel and therefore without any right to property or person. It has always been disregarded by courts of equity, and public opinion and the sentiment of this age, as expressed by all laws and constitutional provisions since, have been against it. The anomalous instances of that conception which still survive are due to courts construing away the changes made by corrective legislation or restricting their application.

"Whether a man has laid open his wife's head with a bludgeon, put out her eye, broken her arm, or poisoned her body, he is no longer exempt from liability to her on the ground that he vowed at the altar to 'love, cherish, and protect' her. We have progressed that far in civilization and justice. Never again will 'the sun go back ten degrees on the dial of Ahaz.' Isaiah 38:8.

"Wives are no longer chattels. There are half a million women voters in North Carolina. They do not need to beg for protection for their persons, their property, or their characters. They can command it." Reaffirmed in Bogen v. Bogen, 219 N.C. 51, 12 S.E.2d 649, 651 (1941).

Similar reasoning would, of course, apply where the wife has wronged the husband.

I would reverse and remand both counts for trial in light of the death of the wife which has destroyed the marriage relationship. Whether the action be for negligence or for willful injury, the public policy reasons for denying a remedy for the wrong have been removed. But, if it is felt the question of legal responsibility for negligence, as distinguished from willful torts, should be reserved to another day, I would at least allow plaintiff her suit on count two; i. e., willful assault and battery resulting in death.

It would, of course, be necessary to overrule In Re Estate of Dolmage, 203 Iowa 231, 212 N.W. 553 and Aldrich v. Tracy, 222 Iowa 84, 269 N.W. 30 to allow this case to be presented. Those cases should be overruled. Denial of a claim on interspousal immunity basis where the defendant has murdered his spouse is indefensible under our modern codes.

Since domestic tranquillity is one of the claimed bulwarks supporting the interspousal immunity doctrine, and since it is here removed by death, I regard the distinction between Lord Campbell's Acts and Survivorship Death Statutes as entirely specious. The wrongful action came before death (and in this case is alleged to have caused the death), the cause survives, not only because the statutes say causes should survive but because the cause of the disability is now removed. Questions raised where both spouses are still living can await another case and another day.

I would reverse and remand for trial at least Count II.

MASON, J., joins in this dissent.