## Marion Richard, b/n/f Edna Greenwood v. Robert Richard

[300 A.2d 637]

No. 19-72

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed February 6, 1973

*Kilburn & Lynch,* Swanton, for Plaintiff.

*Richard H. Wadhams, Jr., Esq.,* of *Pierson, Affolter & Amidon,* Burlington, for Defendant.

**Smith, J.** The question before us has been certified to us by the presiding judge of the Franklin County Court, under the provisions of Rule 5(b) of the Vermont Rules of Appellate Procedure appealing the Amended Order of Superior Judge Stephen B. Martin, dated February 4, 1972.

The question certified is:

> "Whether a wife can sue her husband for personal injuries received by her during her marriage while riding as a guest in an automobile operated by her husband by reason of his alleged negligence."

The factual situation is simple. On November 14, 1970, in St. Albans, Vermont, plaintiff, during her marriage to the defendant, was injured in a one-car accident when she was a passenger in an automobile operated by her husband. Plaintiff's complaint, brought in her name and the name of her next friend, alleges that the defendant operated the automobile in a negligent manner, causing it to collide with a light pole. As a result of the collision, the plaintiff alleges she received severe, painful and permanent injuries for which she claims damages.

Some forty years ago, this Court was presented with a question almost identical to the one now presented. *Comstock v. Comstock,* 106 Vt. 50, 169 A. 603 (1934). This Court then held that under the Rights of Married Women Act, then G.L. 3521 and G.L. 3524, now found in 15 V.S.A. §§ 61 and 69, a married woman could not maintain an action against her husband under the laws of this State for injuries caused by his gross negligence in operating an automobile in which she was riding as his guest. Declaring that to allow such a suit

by the wife against her husband would be contrary to the common law as well as to the statute, the Court said:

> "If the right exists, the wife is entitled to assert it; if it does not exist, she has no standing in court. Clearly such a right is not to be found in express terms in our statute; nor can it be fairly implied from the language used. If such a radical change is to be made in the common-law rights and liabilities of married persons, as that urged by the plaintiff, it must be made by clear legislative enactment and not by this Court in giving an unwarranted construction to the statute before us." 106 Vt. at 57.

It is obvious that the particular statute the Court had in mind was G.L. 3524, headed "Rights in Personalty", which includes rights of action acquired by a woman. Although differing in punctuation the then Act is exactly similar to 15 V.S.A. § 66:

> "All personal property and rights of action acquired by a woman before or during coverture, except by gift from her husband, shall be held to her sole and separate use. Neither a wife's separate property nor the rents, issues, income and products of the same shall be subject to the disposal of her husband or liable for his debts. Nothing herein shall authorize a claim by either husband or wife against the other for personal services."

In *Juaire* v. *Juaire,* 128 Vt. 149, 259 A.2d 786 (1969), we held that a wife could maintain an action in equity to recover damages arising out of an accident alleged to have been caused by the tortfeasor which occurred prior to marriage, but, although mention was made of the "somewhat dubious dictate of Comstock", the question presented was strictly confined to the particular circumstances presented in the case. *Juaire* was an action in equity, as is the instant case before us, but V.R.C.P. 2 now provides for one form of action known as a "civil action", although the rule only affects procedure and not the right to a specific kind of legal or equitable return. So the incident that the instant case was

brought in equity has no significance in the problem presented.

The views expressed in *Comstock* were similar to the views expressed by a majority of the jurisdictions at the time. Indeed, it is still the law in the greater number of states, but a growing number of jurisdictions, now at least nineteen in number, have taken a contrary and more liberal stand on the question presented. We think the time has come for this Court to overrule the harsh dictate of *Comstock* in respect to the right of a married woman to maintain an action against her husband for personal injuries, received by her during her marriage while riding as a guest in an automobile operated by her husband, by reason of his negligence.

The opinion of this Court at the time of *Comstock* was that the Vermont Rights of Married Women Act did not permit an action to be brought by a wife against her husband, because such action was not specifically provided for in the Act. It is equally true that there is nothing in 15 V.S.A. § 66 which specifically bars such action. The Act provides that:

> "All personal property and rights of action acquired by a woman before or during coverture, except by gift from her husband, shall be held to her sole and separate use."

The only specific bar in the statute is that:

> ". . . Nothing herein shall authorize a claim by either husband or wife against the other for personal services."

What the *Comstock* Court was saying was that under the common law there was no right of action by a wife against the husband, because under that law they were regarded as one person, and that the statute in question did not abrogate this principle except in the specific instances provided in the statute. What the Court did was read into the statute the common law rule that husband and wife were one person, as concerning the right to maintain a tort action between husband and wife, although the statute, itself, was silent on the subject of actions for personal torts. See W. Prosser, Torts, Chapter 23, Domestic Relations (4th ed. 1971).

We are a common law state. 1 V.S.A. § 271. But in the case of *Wright* v. *Burroughs,* 61 Vt. 390, 394, 18 A. 311 (1889), this Court considered the effect of No. 140, Acts of 1884, the original statute setting up the rights of married women, on whether in a suit upon a promissory note a married woman must join her husband as plaintiff. Speaking of the purpose of the statute, the Court said:

> "And although the statute may seem in form to be merely permissive, 'may sue and be sued', and to leave it optional whether the husband shall join or not; yet, when we consider that its purpose was to cut up by the roots the marital rights of the husband in the wife's personal property and rights of action, and to set her free from the thraldom of the common law in respect thereof, and confer upon her the rights and privileges of an independent legal existence, it would be inconsistent with the spirit of the act to construe it as permissive merely and not mandatory."

It is true, as the *Comstock* court said, that the opinion in *Wright* did not intimate that the legislature intended to create a right of action that did not exist before. But there was no occasion for a consideration of this question in the matter before the court in *Wright.* But the *Wright* court did make abundantly clear that the purpose of the Act was to set a married woman free "from the thraldom of the common law" relative to the rights of a husband in the rights of action of the wife. Nor do we think that it can be successfully disputed that the overwhelming intent of the General Assembly in enacting the so-called Rights of Married Women Act was to relieve such women from the outmoded conception of the common law that husband and wife were one person.

There is the temptation in the instant case, where the parties have stipulated that the husband is insured, and that the parties are in the process of divorce, to hold our decision here only as to the facts presented which could lead to the conclusion that in this case, at least, there is no domestic tranquility that could be disturbed by abrogation of the interspousal immunity under the facts presented. Such would be the easy path. However, it would leave unresolved the real

question presented. It would still leave uncertain the law of this jurisdiction on the right of a wife to sue her husband for personal injuries received by her during her marriage while riding as a guest in an automobile operated by her husband by reason of his alleged negligence, and could only lead to further litigation on the same question until a final determination of the question was made. We shall proceed to make such determination now.

The appellant asserts that public policy dictates that the doctrine of interspousal tort immunity be maintained. *Comstock* v. *Comstock, supra.* It is the argument of the appellant that it is the public policy of the state to promote marital harmony, and that if a husband or wife are free to sue each other for real or fancied wrongs the home may well be split apart by the adversary roles which the spouses will be required to assume.

The defendant also points out to us the real danger of fraud or collusion between the spouses in such suits against each other where insurance is involved, where the risk of loss is removed and both spouses stand to gain in a decision adverse to the defendant. He cites to us *Lyons* v. *Lyons*, 2 Ohio St. 2d 243, 208 N.E.2d 533 (1965), and *Rubalcava* v. *Gisseman*, 14 Utah 2d 344, 384 P.2d 389, 391–92 (1963), in support of his arguments. The cases cited, as well as many others from other jurisdictions not cited by the appellant, fully support the position he takes.

The doctrine of interspousal immunity was based upon the theory that the husband and wife were one person in the common law. But the common law is not static and immutable. In the New Jersey case of *State* v. *Culver*, 23 N.J. 495, 505, 129 A.2d 715, 721 (1957), then Chief Justice Vanderbilt of that court stated:

". . . One of the great virtues of the common law is its dynamic nature that makes it adaptable to the requirements of society at the time of its application in court. There is not a rule of the common law in force today that has not evolved from some earlier rule of common law, gradually in some instances, more suddenly in others, leaving the common law of today when com-

pared with the common law of centuries ago as different as day is from night. The nature of the common law requires that each time a rule of law is applied it be carefully scrutinized to make sure that the conditions and needs of the times have not so changed as to make further application of it the instrument of injustice. Dean Pound posed the problem admirably in his Interpretations of Legal History (1922) when he stated 'Law must be stable, and yet it cannot stand still.' "

As in most, if not all states, it cannot be said that in Vermont the legal existence of the wife is merged with that of the husband, as she was in the old common law. The Rights of Married Women Act gives her the right to make contracts with persons other than her husband and sue or be sued on them, without the joinder of her husband. She may serve as executrix, administratrix, guardian or trustee. She may convey real estate which belongs to her as if she were unmarried, and all personal property or rights of action acquired by her before, or after, marriage are held to her own and separate use. In actions for divorce or separation she has at least equal rights to the custody of the children of the parties.

Although the Rights of Married Women Act bars her from making contracts with her husband, this Court held in *Travelers Ins. Co.* v. *Gego,* 106 Vt. 155, 162, 170 A. 917 (1934), that although such contract was void and unenforceable at law, it is, if just and fair, valid and enforceable in equity, citing *Porter* v. *Bank of Rutland,* 19 Vt. 410 (1847). But under V.R.C.P. 2 such action would be a civil action, rather than one in equity, at the present time.

"Although there exist certain reciprocal obligations and duties growing out of the marital relation, whatever they are, they are not based upon the supposed vassalage of the wife or the imagined lordliness of the husband." *Rains* v. *Rains,* 97 Col. 19, 46 P.2d 740, 742 (1935).

While statutes designed to remove married women from the disabilities imposed upon them by common law vary greatly in their scope, we believe that the Vermont statute,

as did the one in Colorado, wholly emancipated her from the condition of thraldom in which she was placed at common law.

Despite the doleful prediction by many courts that the permitting of tort actions between husband and wife would result in a flood of litigation, there has been nothing to show that in the states which have permitted such action that the peace and harmony of the home is disrupted to any greater extent, or that the courts are deluged with a greater volume of litigation than in the states which deny such action.

> "The contention that such actions should not be allowed for the reason they tend to disturb domestic tranquility is particularly weak. We can perceive of nothing in the nature of tort actions which would make them more acrimonious and disturbing to domestic tranquility than property actions, criminal proceedings and divorce suits. . . ." *Courtney* v. *Courtney*, 184 Okl. 395, 87 P.2d 660, 667 (1939); Comment, *Torts Between Persons in Domestic Relation*, 43 Harv.L.Rev. 1030, 1053 (1930). See W. Prosser, Torts 863 (4th ed. 1971).

That there is a possibility of fraud or collusion in an automobile negligence suit brought by a wife against her husband cannot be denied. But the same is also true in a suit by a guest against the driver of the automobile in which he was a passenger. However, we have not lost such faith in our courts and juries to believe that they could not weed out the spurious claims of the few. *Cohen* v. *Kaminetsky*, 36 N.J. 276, 176 A.2d 483, 487 (1961).

It is common knowledge that the purchase of automobile liability insurance is almost universal. Thus, as a practical matter, when the real defendant in a suit is an insurance company there seems little danger that litigation by a wife against a husband for injuries received as a result of his claimed negligence, while operating the automobile in which she is a passenger, will result in disrupting the family relationship. What we have previously said relative to the danger of fraud and collusion between the spouses is equally applicable here.

"A man pays for insurance to indemnify any person whom he injures by his careless driving, and if it is intended to except his wife from such indemnification such intent can easily be expressed in the contract." *Courtney* v. *Courtney, supra,* 87 P.2d at 668. Also see 4 Wis. L. Rev. 37 (1926).

Thus, the insurance carriers can protect themselves.

The Constitution of Vermont, Article 4, provides in part:

"Every person within this state, ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which he may receive to his person, property or character."

Having rejected the archaic principle that husband and wife are "one person", it must necessarily follow that a married woman is a "person" under the Constitution of Vermont, and is entitled to all the rights guaranteed to a person under Article 4.

In departing from the rule as laid down in *Comstock* v. *Comstock, supra,* we explicitly limit our decision to claims by a wife against a husband arising out of motor vehicle accidents. We cannot decide today any more than what is presented to us by the question certified. What other claims should be entertained by our courts arising between husband and wife must be left to future decisions.

The question certified to us is answered in the affirmative. The effect of this decision is applicable only to the instant case, and other actions that may be brought in the future, and is not to be applied retroactively.

*Judgment affirmed.*