Lois A. SHOOK, Executor of the Estate
of Kathryn Madison Crabb,
Deceased, Appellant,

v.

Dennis CRABB, Executor of the Estate
of D. N. Crabb, Deceased, Appellee.

No. 62696.

Supreme Court of Iowa.

July 25, 1979.

Verne Lawyer and Richard H. Doyle IV of Lawyer, Lawyer & Jackson, Des Moines, for appellant.

Warren L. Bush of Reimer & Vipond, Denison, and Patrick H. McDonnell, Omaha, Neb., for appellee.

REES, Justice.

In this appeal Lois A. Shook, executor of the estate of Kathryn Madison Crabb, appeals from the order of the trial court sustaining defendant's motion for summary judgment in an action for wrongful death brought against the estate of D. N. Crabb, the husband of Kathryn Madison Crabb. The appellant contends the reasons underlying the doctrine of interspousal immunity, established by the case law of this jurisdiction, are of questionable validity and that the doctrine should therefore be abrogated by us. For the reasons set out below, we reverse the trial court and remand this case for further proceedings.

Kathryn and D. N. Crabb were wife and husband, residing in Iowa. On January 6, 1978 they were occupants of an aircraft owned and piloted by D. N. Crabb when it crashed near Campo, Texas. Both perished in the accident.

Plaintiff's petition was filed on July 24, 1978, in which she alleged Kathryn Crabb's

death was the result of the negligent operation of the airplane on the part of D. N. Crabb. Plaintiff sought damages totaling $600,000. In the defendant's answer, the claimed negligence of D. N. Crabb was denied, and the defendant asserted the marital status of the parties at the time of their deaths.

On August 22, 1978 the defendant moved for summary judgment, asserting that the doctrine of interspousal immunity barred recovery. The district court, while questioning the legal viability of the doctrine, sustained defendant's motion for summary judgment. This appeal ensued.

We are therefore confronted with the issue as to whether the bases underlying the common law doctrine of interspousal immunity have been so eroded over the course of time as to justify its abrogation in this jurisdiction.

I. Before reaching the merits of the controversy, some comments regarding the appropriateness of this subject for judicial action and the scope of the issue presented are deemed necessary.

The defendant argues in this appeal that the abolition of the doctrine of interspousal immunity involves determinations of public policy more properly subject to legislative enactment rather than judicial action. Defendant contends that since the common law is presumed to be in effect in this state except where revised or repealed by statute or constitution, *Iowa Civil Liberties Union v. Critelli*, 244 N.W.2d 564, 568 (Iowa 1976), and that we had previously stated that the power to grant or deny a cause of action lies with the legislature, *Hankins v. Derby*, 211 N.W.2d 581, 584 (Iowa 1973), we should await legislative action in this area.

▇ If the legislature chose to address the question, any enactment by it would be dispositive, absent constitutional objection. Yet when a doctrine or rule is of judicial origin, we would "abdicate our own function, in a field peculiarly nonstatutory, when we refuse to reconsider an old and unsatisfactory court-made rule", *Woods v. Lancet*, 303 N.Y. 349, 355, 102 N.E.2d 691,

694 (1951). A clear majority of jurisdictions which have considered this argument have found the subject matter ripe for determination and reached the merits of the issue. *See, e.g., Brooks v. Robinson*, 259 Ind. 16, 22–23, 284 N.E.2d 794, 797 (1972); *Lewis v. Lewis*, 370 Mass. 619, ——, 351 N.E.2d 526, 531–32 (1976); *Beaudette v. Frana*, 285 Minn. 366, 370–71, 173 N.W.2d 416, 418–19 (1969); *Rupert v. Stienne*, 90 Nev. 397, 399–400, 528 P.2d 1013, 1014–15 (1974); *Immer v. Risko*, 56 N.J. 482, 487, 267 A.2d 481, 483–84 (1970); *Flores v. Flores*, 84 N.M. 601, 603–04, 506 P.2d 345, 347–48 (Ct.App.1973); *Digby v. Digby*, R.I., 388 A.2d 1, 2–3 (1978); *Freehe v. Freehe*, 81 Wash.2d 183, 189, 500 P.2d 771, 775–76 (1972). *Contra, Burns v. Burns*, 111 Ariz. 178, 180–81, 526 P.2d 717, 720 (1974); *State Farm Mutual Ins. Co. v. Leary*, 168 Mont. 482, 486, 544 P.2d 444, 447 (1975); *Varholla v. Varholla*, 56 Ohio St.2d 269, 270, 383 N.E.2d 888, 889 (1978). An appellate court would be remiss in its duties if it did not from time to time reexamine the analysis underlying its precedents.

In *Hankins v. Derby*, when we said that we would generally defer to the legislature regarding plaintiff's particular cause of action, we noted that such was the posture adopted by the courts of other jurisdictions which had considered the issue. As previously stated, such deference does not typify the judicial approach to the question of interspousal immunity. The doctrine of interspousal immunity is grounded in the case law of this court rather than upon statutory enactment. Absent such a legislative base, examination of the doctrine is properly within our province.

▇ In regard to the scope of the issue before us, the plaintiff would have us consider the possibility of limiting our holding to the situation where one or both of the spouses is dead, as was done by the Utah Supreme Court in *Hull v. Silver*, Utah, 577 P.2d 103 (1978), and the Supreme Court of Rhode Island, *Asplin v. Amica Mutual Insurance Co.*, R.I., 394 A.2d 1353 (1978). Our wrongful death statute, § 611.20, The Code, precludes that possibility. It is a survival

statute; it does not create a new cause of action for the deceased's estate, but rather allows the estate to assert a cause of action which the decedent would have had, had he or she survived. *Egan v. Naylor*, 208 N.W.2d 915, 917 (Iowa 1973). *Wright v. Daniels*, 164 N.W.2d 180, 181 (Iowa 1969); *Cardamon v. Iowa Lutheran Hospital*, 256 Iowa 506, 520, 128 N.W.2d 226, 235 (1964). Thus the capacity of an estate to bring an action for wrongful death is contingent upon the capacity of the estate's decedent to bring the action had he or she survived. With the capacity of the estate contingent upon that of its decedent, it can make no difference under the law of this jurisdiction, for purposes of suit, whether a spouse is killed or merely injured. While a death would be determinative of any preservation of family harmony argument, our statute focuses upon the capacity of the decedent had he or she survived and is distinguishable from the Utah and Rhode Island statutes.

Thus, even though there were no survivors of the airplane crash, and consequently there is no marital harmony to be preserved or disturbed in this case, the survival aspect of our wrongful death statutes brings squarely before us the issue of the continued vitality of the concept of interspousal immunity regarding personal injuries allegedly the result of spousal negligence.

At the time defendant's motion for summary judgment was sustained, the doctrine of interspousal immunity was firmly entrenched in the case law of this state. *Wright v. Daniels*, 164 N.W.2d 180 (Iowa 1969); *Flogel v. Flogel*, 257 Iowa 547, 133 N.W.2d 907 (1965); *Aldrich v. Tracy*, 222 Iowa 84, 269 N.W. 30 (1936); *In re Dolmage's Estate*, 203 Iowa 231, 212 N.W. 553 (1927); *Peters v. Peters*, 42 Iowa 182 (1875). While the doctrine was originally based on the common law fiction of the merger of husband and wife into a single legal entity, 1 W. Blackstone, *Commentaries* 442 *–445; McCurdy, *Torts Between Persons in Domestic Relations*, 43 Harv.L.Rev. 1030, 1030–33 (1930), with the demise of that legal fiction the doctrine has found support in considerations of marital harmony, as well as the

potential for collusive lawsuits. *Restatement (Second of Torts* § 895F, Comment d (1979); Prosser, *Law of Torts*, § 122, at 862–63 (4th ed. 1971).

Our prior cases directly regarding the doctrine reflect the impression that a majority of jurisdictions favored retention of the immunity. A survey of existing case law evidences a definite trend toward abolishing in toto or limiting in part application of the doctrine of interspousal immunity due to the fundamental policy consideration of providing judicial redress for an otherwise cognizable wrong, and a concomitant rejection of the arguments advanced in support of the doctrine: *Bennett v. Bennett*, 224 Ala. 335, 140 So. 378 (1932); *Cramer v. Cramer*, 379 P.2d 95 (Alaska 1963); *Windauer v. O'Connor*, 107 Ariz. 267, 485 P.2d 1157 (1971); *Leach v. Leach*, 227 Ark. 599, 300 S.W.2d 15 (1957); *Klein v. Klein*, 58 Cal.2d 692, 26 Cal.Rptr. 102, 376 P.2d 70 (1962); *Rains v. Rains*, 97 Colo. 19, 46 P.2d 740 (1935); *Bushnell v. Bushnell*, 103 Conn. 583, 131 A. 432 (1925); *Rogers v. Yellowstone Park Co.*, 97 Idaho 14, 539 P.2d 566 (1975); *Brooks v. Robinson*, 259 Ind. 16, 284 N.E.2d 794 (1972); *O'Grady v. Potts*, 193 Kan. 644, 396 P.2d 285 (1964); *Brown v. Gosser*, 262 S.W.2d 480 (Ky.1953); *Moulton v. Moulton*, Me., 309 A.2d 224 (1973); *Lusby v. Lusby*, 283 Md. 334, 390 A.2d 77 (1978); *Lewis v. Lewis*, 370 Mass. 619, 351 N.E.2d 526 (1976); *Hosko v. Hosko*, 385 Mich. 39, 187 N.W.2d 236 (1971); *Beaudette v. Frana*, 285 Minn. 366, 173 N.W.2d 416 (1969); *Imig v. March*, Neb., 279 N.W.2d 382 (1979); *Rupert v. Stienne*, 90 Nev. 397, 528 P.2d 1013 (1974); *Thompson v. Thompson*, 105 N.H. 86, 193 A.2d 439 (1963); *Merenoff v. Merenoff*, 76 N.J. 535, 388 A.2d 951 (1978); *Maestas v. Overton*, 87 N.M. 213, 531 P.2d 947 (1975); *Jacobs v. United States Fidelity and Guaranty Co.*, 2 Misc.2d 428, 152 N.Y. S.2d 128 (1956); *Foster v. Foster*, 264 N.C. 694, 142 S.E.2d 638 (1965); *Fitzmaurice v. Fitzmaurice*, 62 N.D. 191, 242 N.W. 526 (1932); *Courtney v. Courtney*, 184 Okl. 395, 87 P.2d 660 (1938); *Digby v. Digby*, R.I., 388 A.2d 1 (1978); *Pardue v. Pardue*, 167 S.C. 129, 166 S.E. 101 (1932); *Scotvold v.*

*Scotvold*, 68 S.D. 53, 298 N.W. 266 (1941); *Bounds v. Caudle*, 560 S.W.2d 925 (Tex. 1977); *Surratt v. Thompson*, 212 Va. 191, 183 S.E.2d 200 (1971); *Richard v. Richard*, 131 Vt. 98, 300 A.2d 637 (1973); *Freehe v. Freehe*, 81 Wash.2d 183, 500 P.2d 771 (1972); *Coffindaffer v. Coffindaffer*, W.Va., 244 S.E.2d 338 (1978); *Nelson v. American Employers Ins. Co.*, 258 Wis. 252, 45 N.W.2d 681 (1951).

Commentators have almost unanimously tended toward abolition of the doctrine. *Restatement (Second) of Torts*, § 895F (1979); W. Prosser, *Law of Torts*, § 122 (4th ed. 1971); 1 F. Harper & F. James, *The Law of Torts*, § 8.10 (1956); Greenstone, *Abolition of Intra-family Immunity*, 7 Forum 82 (1972); McCurdy, *Torts Between Persons in Domestic Relation*, 43 Harv.L. Rev. 1030 (1930); Note, *Domestic Relations—Abrogation of Interspousal Immunity—An Analytical Approach*, 19 DePaul L.Rev. 590 (1970); Note, *Litigation Between Husband and Wife*, 79 Harv.L.Rev. 1650 (1966); Note, 6 Seton Hall L.Rev. 1746 (1975); Note, 13 Duq.L.Rev. 156 (1974); Comment, 11 Suffolk U.L.Rev. 1214 (1977); Comment, 36 Mont.L.Rev. 251 (1975); Comment, 12 New Eng.L.Rev. 333 (1976); Comment, 27 Ohio St.L.J. 550 (1966); Comment, 3 Rut.-Cam.L.J. 183 (1971).

Often quoted is the following excerpt from Prosser, supra, at 863:

> Stress has been laid upon the danger of fictitious and fraudulent claims, on the very dubious assumption that a wife's love for her husband is such that she is more likely to bring a false suit against him than a genuine one; and likewise the possibility of trivial actions for minor annoyances, which might well be taken care of by finding consent to all ordinary frictions of wedlock—or at least assumption of risk! The chief reason relied upon by all these courts, however, is that personal tort actions between husband and wife would disrupt and destroy the peace and harmony of the home, which is against the policy of the law. This is on the bald theory that after a husband has beaten his wife, there is a state of peace and harmony left to be disturbed; and that if she is sufficiently injured or angry to sue him for it, she will be soothed and deterred from reprisals by denying her the legal remedy—and this even though she has left him or divorced him for that very ground, and although the same courts refuse to find any disruption of domestic tranquility if she sues him for a tort to her property, or brings a criminal prosecution against him. If this reasoning appeals to the reader, let him by all means adopt it.

While part of this quote involves intentional rather than negligent torts, the arguments in favor of interspousal immunity are generally equally applicable, and lacking, as to both. *Klein v. Klein*, 58 Cal.2d 692, 26 Cal.Rptr. 102, 104, 376 P.2d 70, 72 (1962).

■ The jurisdictions listed above have found this argument compelling, as do we. While the state has an interest in encouraging marital harmony, to deny a forum for the redress of a wrong would do little to advance the compatibility of a married couple. It is difficult to see how denying access to the legal process could be said with any certainty to encourage domestic tranquility. Interspousal suits are not barred for the vindication of a property interest, § 597.3, The Code, or for personal labor, § 597.16, The Code. It is difficult to understand why negligence actions between spouses would be any more disruptive than a case involving property or for personal labor, both of which are now permitted.

The possibility of insurance is also relevant to arguments regarding marital harmony. If insurance is carried, the possibility of resultant discord is minimized as the recovery would in most cases be paid by the carrier. Under such circumstances, denying a cause of action would actually be more likely to cause marital difficulties. *Coffindaffer v. Coffindaffer*, 342 of 244 S.E.2d; *Immer v. Risko*, 56 N.J. 482, 489, 267 A.2d 481, 484–85 (1970). Even if there is no insurance, it would seem that any damage to the marital relationship is really occasioned by the initial injury rather than any subsequent judicial proceeding, the predis-

position of the relationship being determinative.

It seems fairer to us to leave the ultimate decision of whether to bring suit to the harmed spouse or, as in this case, her estate. Just as the ultimate decisions concerning the continued existence of a marriage lies largely with the parties after the abrogation of the fault concept in divorce, *In re Marriage of Williams,* 199 N.W.2d 339 (1972), so should the decision as to whether to bring an action for personal injuries resulting from the negligence of one's spouse. Concerns about a possible deluge of interspousal actions crowding dockets have not been realized in jurisdictions which have completely abolished the doctrine. *Richard v. Richard,* 131 Vt. at 105, 300 A.2d at 641.

II. Arguments in support of maintenance of the doctrine of interspousal immunity have also been made based on the potential for fraud upon insurance companies if such suits are allowed. Although no basis for such a concern appears in this case, the scope of our issue mandates consideration of this factor.

We first note that the terms of insurance policies are, or can be, controlled by the parties. To the extent that insurance companies fear collusive actions, they can either limit the scope of coverage or make appropriate adjustments in premiums.

Secondly, we are unable to effectively distinguish the potential for fraud in the context of interspousal suits from that in any other action for personal injury. Yet all personal injury actions are not barred. Our system of justice, through discovery and the presentation of evidence to juries, is adequately equipped to discern the existence of fraud and collusion. As stated by the Supreme Court of West Virginia in *Coffindaffer,* 343 of 244 S.E.2d:

> Anyone who has confronted insurance defense counsel in personal injury cases knows that it is a rare occasion when the false or collusive claim escapes their searching examination. We do an injustice not only to the intelligence of jurors, but to the efficacy of the adversary system, when we express undue concern over the quantum of collusive or meritless law suits. There is, to be sure, a difference between the ability to file a suit and to achieve a successful result. It is upon the anvil of litigation that the merit of a case is finally determined. Forged in the heat of trial, few but the meritorious survive.

Other courts have reached a like conclusion. *See, e.g., Klein v. Klein,* 58 Cal.2d 692, 26 Cal.Rptr. 102, 105, 376 P.2d 70, 73; *Merenoff v. Merenoff,* 76 N.J. 535, 552–53, 388 A.2d 951, 960–61.

We therefore abrogate the doctrine of interspousal immunity in this jurisdiction as it pertains to actions for personal injury the result of spousal negligence and, acknowledging the equal applicability of the basic considerations, intentional torts. This result is compelled by the fundamental proposition of public policy that the courts should afford redress for a wrong, and the failure of the rationales supporting the doctrine to withstand scrutiny. We therefore reverse the order of the trial court sustaining the defendant's motion for summary judgment, and remand this case for further proceedings.

The holding of this case shall be applicable to all actions in which a final order, decree or judgment has not been entered as of the date of the filing of this opinion.

REVERSED AND REMANDED.

All Justices concur except LeGRAND, J., who dissents.

LeGRAND, Justice (dissenting).

I must dissent, even though I know full well my views will not prevail. I do so in the hope, perhaps futile, that someday the court will repent and restore the salutary rule of interspousal immunity which it today improvidently abrogates.

I recognize the present score card of judicial decisions supports the result reached. While the numbers are against me, some causes are so fundamentally unsound that no amount of rationalization and no volume of authority can make them right. This is one of those.

My objections are based solely on principles of public policy. I limit my remarks to *negligent,* as opposed to *intentional,* torts committed by one spouse against the other.

We would be better served by protecting society from such suits. While it is currently fashionable to treat the harmony of the home lightly, the family nevertheless remains the bulwark of our society. Permitting husband and wife to sue each other for negligence is inimical to the very notion of harmony and trust so important to the marriage relationship.

The majority brushes this aside by insisting any damage to the marriage has already been done by the commission of the tort. The supporting "authority" for this is Professor Prosser, whom the majority quotes with approval.

If Prosser's opinion is limited to *intentional* torts, it has some validity. If Prosser means to say that an isolated act of negligence—on the highway or in the home—destroys the faith, trust, and tranquility of the marriage, his statement is simply incredible.

Several opinions have taken issue with this Prosser pronouncement. The dissent in *Rogers v. Yellowstone Park Co.,* 97 Idaho 14, 539 P.2d 566, 574 (1975) expressed disagreement this way:

> The majority . . . cites a statement from Prosser, Law of Torts, 4th ed. which supposedly dispenses with the doctrine of interspousal immunity upon the basis that it is based "on the bald theory that after a husband has beaten his wife, there is a state of peace and harmony left to be disturbed."

Although it may be heresy to disagree with the gospel according to Prosser, nevertheless if the good professor is actually suggesting that such statement justifies the abolition of interspousal immunity in negligence cases as distinguished from intentional torts I must confess my admiration at the sine qua non of non sequiturs. *See also Smith v. Smith,* 205 Or. 286, 287 P.2d 572 (1955). The glaring fallacy in the majority's utilization of Prosser . . ., is the illogical leap from intentional tort to negligence.

In *Smith v. Smith,* 205 Or. 286, 287 P.2d 572, 581 (1955), the Oregon Supreme Court was equally critical, when it characterized the passage in question as suggesting "the learned author [Professor Prosser] has wandered for a moment from a pattern of calm judicial analysis."

The same sentiments, with which I wholeheartedly agree, were expressed in the dissenting opinion in *Leach v. Leach,* 227 Ark. 599, 300 S.W.2d 15, 18–19 (1957).

The majority is quick to point to the present trend toward abrogating the rule and ticks off a number of states which have done so. Actually the weight of authority is not as impressive as a mere head count suggests. In many jurisdictions this was done on the authority of specific statutes. *See Fitzmaurice v. Fitzmaurice,* 62 N.D. 191, 242 N.W. 526 (1932); *Rains v. Rains,* 97 Colo. 19, 46 P.2d 740 (1935). Others have limited liability to injuries arising out of automobile accidents. *See Lewis v. Lewis,* 370 Mass. 619, 351 N.E.2d 526 (1976).

Another public policy consideration rests in the opportunity for collusion and fraud implicit in such claims. The majority dismisses this as of no significance. But the opinion does not face up to the dilemma it poses. If husband and wife are *real* adversaries, the peace and harmony of the marriage are indeed imperiled. If they are *not* adversaries at all, our whole system is subverted. Neither alternative is acceptable to me.

The majority counters by saying the law is equal to the task of discovering connivance by husband and wife. This again misses the point. The proud boast that the law gets at the truth is premised on the *adversary* process. Take away that premise, and the conclusion goes with it. What sort of "truth" surfaces when plaintiff and defendant desperately want the same result? How do courts avoid collusion if the defendant wins by losing? As was so appropriately stated in the dissent in *Hosko v. Hosko,* 385 Mich. 39, 187 N.W.2d 236, 240 (Mich.1971), this really results in a "joint

venture," with "the husband calling his insurance agent, the wife calling her lawyer and both entertaining visions of better days ahead."

I disagree, too, with another argument advanced by the majority. It is said there is no reason to prohibit negligence actions between husband and wife because we have *statutes* permitting such suits "to vindicate property rights . . . or for personal labor." *See* §§ 597.3 and 597.16. I find that supports my argument, not the majority's. These claims are permitted because there *is* a statute. The legislature has remained significantly silent in the personal injury tort field.

Today's case involves an airplane accident. Frequently such claims are the result of automobile mishaps. However, the implications of the majority opinion far transcend the immediate holding. It extends to countless day-to-day husband and wife relationships, limited only by the imagination and ingenuity of the parties, neither of which is in short supply.

The possibilities are explored in *Klein v. Klein,* 26 Cal.Rptr. 102, 105–106, 376 P.2d 70, 73–76 (dissenting opinion) (Cal.1962), *Leach,* 300 S.W.2d at 18–19 (dissenting opinion), and *Rogers,* 539 P.2d at 573. Although by no means exhaustive, the examples there set out should give this court pause before embarking on this new course.

I cannot subscribe to a policy which turns the family dinner table into a trial rehearsal, with children choosing up sides as to which parent is right. I am told this is progress. Progress? It is a giant step toward retrogression.