Rafael FRANCO et ux., Appellants,

v.

Bill GRAHAM et al., Appellees.

No. 618.

Court of Civil Appeals of Texas,
Corpus Christi.

June 17, 1971.

Rehearings Denied Sept. 9, 1971.

Allison, Maddin, White & Brin, Harry F. Maddin, James H. Smith, Corpus Christi, for appellants.

Kleberg, Mobley, Lockett & Weil, J. Lev Hunt, Corpus Christi, for appellees.

## OPINION

BISSETT, Justice.

This is a suit for personal injuries sustained by Rafael Franco and his wife, Lydia Franco, arising out of a truck-automobile collision. Rafael Franco and wife, Lydia Franco, were plaintiffs in the trial court; Bill Graham, the owner of the truck, and Roosevelt Tillis, the driver of the truck, were defendants therein.

The case was tried to a jury which found, in substance, that (a) Roosevelt Tillis failed to keep a proper lookout which was a proximate cause of the collision; (b) Rafael Franco's automobile was on a public highway after dark without taillamps burning, which was negligence and a proximate cause of the collision; (c) Rafael Franco's automobile was stopped on the paved portion of a public highway, which was negligence and a proximate cause of the collision; (d) the reasonable medical expenses for Rafael Franco amounted to $1,545.55; and (e) the reasonable medical expenses for Lydia Franco amounted to $2,212.13. No damages were allowed to Rafael Franco for his injuries, no damages were allowed to him for injuries to his wife, and no damages were allowed to Lydia Franco for her injuries. Based on the jury verdict, the trial court entered judgment for defendants that plaintiffs take nothing. Appeal has been duly perfected to this Court. We affirm as to plaintiff Rafael Franco, but reverse and remand as to plaintiff Lydia Franco. The parties will be designated here as plaintiffs and defendants.

Plaintiffs present eleven points of error, whereby they complain, in substance, that (a) defendants' exhibits 30, 31, 32 and 33 (the taillight bulbs of the Franco automobile) should not have been admitted into evidence, (b) the trial court should not have excluded evidence about accidents other than the collision in question, (c) hospital records containing statements about how the accident happened should not have been admitted in evidence, (d) evidence about previous marital troubles and discord between the plaintiffs should not have been admitted, (e) there was no evidence and that such findings were against the great weight and preponderance of the evidence to support the jury's answers of zero dollars to the issues on pain and suffering of each plaintiff, and (f) plaintiff Lydia Franco was entitled to judgment for the medical expenses because the negligence of her husband should not be imputed to her.

The collision in question occurred on July 4, 1969, at about 3 o'clock A.M., on State Highway 44, within the city limits of Corpus Christi, Texas, though not in a built-up portion of the city. At that time, it was dark, the weather was clear, and the highway was dry. The collision took place along a straight section of the highway. The highway is a divided highway consisting of four traffic lanes and runs in an east-west direction; the north two lanes carry one way westbound traffic and the south two lanes carry one way eastbound traffic; the north two lanes and the south two lanes are separated by a grass median. Plaintiff Rafael Franco was driving a 1960 Ford Thunderbird and Lydia Franco, his wife, was a passenger therein. The defendant Roosevelt Tillis was driving a 1968 GMC tractor-trailer rig (hereinafter called truck) that was owned by the defendant Bill Graham. Both vehicles were in the outside lane of the south portion of the highway and were headed east when the truck struck the Thunderbird.

Roosevelt Tillis testified that he was travelling east in the outside lane of the highway at a speed of about 55 MPH when he saw what looked like a black spot in the road immediately ahead of him and in the outside or righthand lane of traffic;

he determined that the black spot was a car when he was 35 or 40 feet distant and thereafter his truck hit the car. He testified positively that at and immediately prior to the collision (a) plaintiffs' car was stopped on the paved portion of the right-hand lane for eastbound traffic, and (b) plaintiffs' car did not then have any lights, front headlights or rear taillights, burning.

Rafael Franco testified that he, too, was proceeding east in the outside lane of the south portion of the highway when he was struck from the rear by the truck. He testified positively that (a) he was not stopped on the highway when his car was hit but that at the time and point of impact he was driving along at about 35-40 MPH, (b) his front headlights and rear taillights were burning, (c) his car was overrun by the truck while they were both occupying the identical lane of traffic, and (d) he had checked out the taillights on his car on July 2, 1969, and they were all burning properly at that time. Lydia Franco corroborated the testimony of her husband.

Plaintiffs' first and second points complain of the admission into evidence of the taillight bulbs from the Franco car. O. B. Roquemore was called as a witness by plaintiffs under the adverse party rule. He testified that on July 28, 1969, at the request of defendants and without the consent of plaintiffs, he removed the taillight bulbs from the Franco car which was then located in a storage yard for damaged vehicles; he further testified that he mailed them to Dr. William H. Tonn, Jr. the next day. In testimony adduced on plaintiffs' bill of exception and outside of the presence of the jury, the witness Roquemore could not positively identify the exhibits as being the identical taillight bulbs that he had mailed to Dr. Tonn; the markings that Roquemore had placed on the bulbs were somewhat obliterated and all that he would say was that "they appear to be the same." Mr. John Bentley was called as a witness by plaintiffs and he testified that, when he first examined the Franco vehicle on July 11, 1969, none of the taillamps

were on the car. Dr. Tonn, a consulting engineer, who held B.S., M.S., and Ph.D. degrees in engineering from the University of Texas, was called as an expert witness by defendants. He testified that he received some taillight bulbs from Mr. Roquemore a couple of days after July 29, 1969, pursuant to a letter of transmittal from Roquemore, dated July 29, 1969. Whereupon, plaintiffs objected to any testimony concerning the bulbs and their introduction into evidence on the grounds that it had not been established that they were the same bulbs as those taken by Roquemore from the Franco vehicle nor had it been established that the bulbs were in the same condition that they were in subsequent to the accident. Plaintiffs' objections were overruled and Dr. Tonn then testified that the bulbs were broken when he examined them and that they were not burning when they were broken.

On the matter of whether the taillights on the Franco vehicle were burning or not at the time of the accident, in addition to the testimony of the witnesses Roquemore, Bentley and Tonn, summarized above, and the physical evidence of the bulbs themselves, the jury had before it the positive statement of Roosevelt Tillis that the taillights were not burning; the jury also had before it the hereinafter mentioned excerpt from the hospital records to the effect that evidently the lights on the Franco vehicle were out when it was struck by the truck. There is ample evidence in the record to support the answer by the jury to this special issue, irrespective of the admission into evidence of said exhibits or the effect thereof on the jury.

Jurors are the exclusive judges of the controverted issues of fact raised by the evidence, of the weight to be given the evidence, and the inferences to be drawn therefrom. They are the exclusive judges of the credibility of the witnesses. "The law does not attempt to tell jurors what amount or kind of evidence ought to produce a belief in their minds." McCormick

& Ray, Texas Law of Evidence, Vol. 1, § 3, p. 6; Austin Fire Insurance Co. v. Adams-Childers Co., 246 S.W. 365 (Tex.Com. App., 1923); Beck v. Lawler, 422 S.W.2d 816 (Tex.Civ.App., Ft. Worth 1967, wr. ref. n. r. e.).

■ Moreover, the bulbs themselves constituted nothing more than demonstrative evidence. The taillight bulbs were connected to the Franco vehicle by the direct testimony of Roquemore; the chain of possession of the bulbs from Roquemore to Tonn to trial is established. The objection that the bulbs were not shown to be in the same condition as immediately after the collision goes to the weight and not to the admissibility of the bulbs in evidence. The admission of demonstrative evidence is largely within the discretion of the trial court. Liberty Sign Company v. Arendale, 433 S.W.2d 23 (Tex.Civ.App., Ft. Worth, 1968, n. w. h.); Western Cottonoil Company v. Adkisson, 276 S.W.2d 411 (Tex.Civ. App., Eastland 1955, n. w. h.); Ervay-Canton Apartments, Inc. v. Hatterick, 239 S.W.2d 150 (Tex.Civ.App., Ft. Worth 1951, wr. ref. n. r. e.); 23 Tex.Jur.2d, Evidence, § 388, pp. 578–579 and the cases cited therein.

■ Under the circumstances, we do not believe that the trial court abused its discretion in admitting the bulbs into evidence, nor do we find that their admission into evidence constituted such a denial of the rights of plaintiffs as was reasonably calculated to cause and probably did cause the rendition of an improper judgment within the meaning of Rule 434, Texas Rules of Civil Procedure, as contended by plaintiffs. Plaintiffs' first and second points of error are overruled.

Plaintiffs, by their third point of error, contend that the trial court erred in excluding from the evidence plaintiffs' exhibits 36, 37, 38 and 39, being photographs of wrecked automobiles that are not involved in this appeal. Plaintiffs' witness John Bentley, a professional accident reconstruction expert, testified in some detail about measurements, formulas, average deformation of vehicles, coefficient of friction, speed, kinetic energy and about other matters relevant to automobile accidents.

Plaintiffs say that in order to demonstrate to the jury how it was possible for an expert to determine from deformation the relative speed of vehicles involved in an accident, it was vital that these photographs be exhibited to the jury in order that they might compare them with the photographs of the Franco car and of defendants' truck; they urge that all this was material to their case and that the excluded photographs had a direct bearing on the issue of whether or not Rafael Franco was stopped on the highway at the moment of impact.

Defendants counter by saying that Bentley, the expert witness for plaintiffs, correlated to the extent of deformation in the Franco car to "collision tests where the speed is known and the amount of deformation is known" to determine the energy expended by a car and its speed. He then gave his opinion as to the speed of both the Franco vehicle and the truck. Defendants also attack the exhibits as being photographs of entirely different vehicles that were damaged in another accident not associated with that in the case at bar. Further, they contend that the photographs were merely cumulative of the evidence that Bentley had already presented. We agree with defendants.

■ This Court had before it the admissibility of evidence of similar accidents in Garza v. Anderson, 417 S.W.2d 368 (Tex. Civ.App., Corpus Christi, 1967, n. w. h.), wherein this Court said:

"Generally speaking evidence of similar accidents is inadmissible on the issue of whether the party has been negligent except where a proper predicate has been laid showing that the unrelated accident occurred at the same place or under substantially similar circumstances or by means of the same instrumentality. Dal-

las Ry. & Terminal Co. v. Farnsworth, 148 Tex. 584, 227 S.W.2d 1017 (1950)." The accident that caused the damage to the cars in the excluded photographs did not occur at the same place as the accident in this case, nor is there any showing that the two unrelated accidents occurred under substantially similar circumstances, or by means of the same instrumentality. The holding in *Garza* applies in this case. If evidence of similar accidents is not admissible, then evidence by way of photographs of automobiles damaged in entirely unrelated accidents is also inadmissible.

■ There is no reversible error in excluding cumulative evidence. Whitener v. Traders and General Insurance Co., 155 Tex. 461, 289 S.W.2d 233 (Tex.Sup.1956). Applying the foregoing rules to the instant case, we find that as the excluded photographs were not photographs of any vehicle involved in the collision out of which this suit arose, that the same were not relevant to any issue developed in this suit, and therefore, it was not error to exclude them.

■ We further hold that, at best, such photographs were merely cumulative of the evidence that the witness Bentley had already presented and that there was no necessity that such photographs be introduced so as to afford a basis for a comparison with photographs of the vehicle actually involved in order for the jury to answer the issues on whether Franco was stopped on the highway or not at the time of the collision. There is the positive testimony of Roosevelt Tillis that Franco was stopped on the highway at the time in question. The refusal by the trial court to admit such photographs into evidence was not error, and, if error, then the same was harmless, as such action by the trial court was not reasonably calculated to cause nor did it probably cause the rendition of an improper judgment as envisaged by Rule 434, T.R.C.P. Accordingly, plaintiffs' third point of error is overruled.

■ Plaintiffs' fourth point of error complains of the action by the trial court in permitting the introduction into evidence of the following statement contained in the hospital records, to-wit:

" * * * Evidently this patient and her husband had parked on the side of the freeway with the lights out when another truck came and hit them from behind. * * * "

The record clearly reveals that plaintiffs introduced all of their hospital records into evidence, which included the above statement, presumably written into such records by Dr. Antoni, the family doctor of Mrs. Franco. Defendants later emphasized such statement by reading the same into the record in conjunction with their cross-examination of Rafael Franco. Plaintiffs objected on the ground that there was no evidence that the doctor had received such information from anyone. They were overruled. On appeal, in addition to the foregoing ground, plaintiffs state that the same constituted hearsay and should not have been admitted into evidence, arguing that it was never the intention to include any hearsay evidence when the records were introduced. Be that as it may, plaintiffs are in no position to complain of evidence that they, themselves, introduced. It has been held that statements contained in hospital records are admissible under certain conditions and circumstances, as both an admission and as a declaration against interest. Skillern & Sons, Inc. v. Rosen, 359 S.W.2d 298 (Tex.Sup.1962). The plaintiffs were the only persons who were hurt in the collision; the only source of information for such statement had to be the plaintiffs themselves. The hospital records in their entirety had already been put in evidence by plaintiffs, themselves, in the admission of such evidence. Plaintiffs' fourth point of error is overruled.

■ We next consider plaintiffs' fifth and sixth points of error wherein they assert error by the trial court in (a) admit-

ting into evidence a copy of a complaint filed by Lydia Franco against Rafael Franco charging him with the commission of an aggravated assault on her on April 10, 1964, and (b) permitting defendants' counsel to cross-examine Rafael Franco from a divorce petition filed against him by Lydia Franco on August 7, 1968. Plaintiffs earnestly argue that the above matters are collateral and irrelevant to their claims for damages arising out of the collision in this case. They insist that such evidence was highly prejudicial to their recovery in that it suggested that plaintiffs were not deserving people, and that such evidence was reasonably calculated to and probably did cause the rendition of an improper judgment. We reject plaintiffs' argument. The record reveals that both plaintiffs testified, in essence, that they enjoyed a happy, stable family life prior to the collision, and that this situation was materially disrupted by reason of the collision. Plaintiffs, themselves, injected their family life into the evidence and the questions asked them on direct examination and their answers were obviously intended to impress upon the jury that their home and family life was happy, gay, and free from any extraordinary circumstances and events that would indicate any marital trouble or discord. Under such circumstances, defendants were authorized to show that their family life may not have been so ideal or that they may not have always been the happy couple that had been indicated. Plaintiffs' points are not well taken. The evidence of the filing of a criminal complaint against Rafael Franco by his wife, Lydia Franco, was admissible on the question of serenity and compatibility in the home. Likewise, the cross-examination of Rafael Franco delving into the troubles that led to the filing of the petition for divorce was proper. The jury was first advised by plaintiffs that their married life was virtually free of serious difficulties; defendants were, under the circumstances, entitled to further develop this theme. Plaintiffs, having injected their home-life in the case, cannot complain of

defendants' bringing additional facts before the jury. Furthermore, defendants were entitled to show that plaintiffs' statements as to their happy married life were not altogether true, to impeach plaintiffs, to test the credibility of plaintiffs, and to show bias and prejudice. See Robertson v. Southwestern Bell Telephone Co., 403 S. W.2d 459 (Tex.Civ.App., Tyler 1966, n. w. h.); Montgomery v. Pagan, 324 S.W.2d 251 (Tex.Civ.App., Waco 1959, n. w. h.); King v. Moberley, 301 S.W.2d 202 (Tex. Civ.App., Eastland 1957, n. w. h.); Rudd v. Gulf Casualty Co., 257 S.W.2d 809 (Tex.Civ.App., El Paso 1953, n. w. h.); Texas & N. O R. Co. v. Barham, 204 S. W.2d 205 (Tex.Civ.App., Waco 1947, n. w. h.). Plaintiffs' fifth and sixth points do not show reversible error and they are, therefore, overruled.

Plaintiffs' seventh and eighth points are directed at the refusal by the trial court to grant a new trial because of the jury findings of "no damages" in their answers to special issues 9, 10, and 11, which issues inquired into the damages sustained by Rafael Franco for his own injuries, and damages sustained by both plaintiffs by reason of the loss of earning capacity and loss of capacity to perform household services of Lydia Franco. These points cannot be sustained because the jury found Rafael Franco guilty of contributory negligence which was a proximate cause of the collision in question. It necessarily follows that the findings on these damage issues became immaterial and plaintiffs' attack upon the jury's answers thereto is of no consequence to the ultimate disposition of this appeal insofar as Rafael Franco is concerned. Owens v. Rogers, 446 S.W.2d 865 (Tex.Sup.1969); Southern Pine Lumber Co. v. Andrade, 132 Tex. 372, 124 S.W.2d 334 (1939); Cummings v. Jess Edwards, Inc., 445 S.W.2d 767 (Tex.Civ.App., Corpus Christi, 1969, wr. ref. n. r. e.); Bowen v. Redlin, 389 S. W.2d 539 (Tex.Civ.App., Corpus Christi, 1965, n. w. h.). Under such circumstances, the contentions made by plaintiffs under

their seventh and eighth points could not reflect reversible error and they are overruled.

Prior to January 1, 1968, unquestionably it was the law in Texas that damages recovered for the wife's personal injuries were community property. It was also well settled that, in a suit for personal injuries to the wife where she was riding in a car being driven by her husband, contributory negligence of the husband would be imputed to the wife and would defeat a recovery by her, since the proceeds of a recovery became community property and would otherwise inure to the benefit of the negligent husband. Dallas Railway & Terminal Co. v. High, 129 Tex. 219, 103 S.W. 2d 735 (1937); Grace v. Starrett, 411 S. W.2d 774 (Tex.Civ.App., Dallas 1967, wr. ref. n. r. e.); Blazek v. Haizlip, 413 S.W. 2d 486 (Tex.Civ.App., Dallas 1967, n. w. h.); 40 Tex.Jur.2d, Negligence, § 122, pp. 639–640. In this case, Rafael Franco, the husband of Lydia Franco, was found guilty of contributory negligence, as aforesaid, and under the above rule, no damages could be recovered for damages to Lydia Franco, his wife. Plaintiffs, by post submission communication, filed herein, which we consider as a post submission brief, invoke the provisions of Article 4615, Vernon's Ann.Civ.St., as grounds for supporting a recovery for Lydia Franco.

We now consider plaintiffs' ninth point of error wherein they claim that the trial court erred in failing to grant a new trial to the plaintiff Lydia Franco because there was no finding of negligence on her part and the finding that she did not suffer any damages is against the great weight and preponderance of the evidence. They, in effect, argue that the recovery for personal injuries (except for loss of earning capacity) sustained by Lydia Franco, by virtue of the statute, is her separate property. Therefore, they say that the negligence of her husband should not be imputed to her, and should not bar her recovery.

In deciding the merits of this point, we note that Article 4615, V.A.C.S., effective January 1, 1968, and as it existed on July 4, 1969, when this cause of action arose, provided:

"The recovery awarded for personal injuries sustained by either spouse during marriage shall be the separate property of that spouse except for any recovery for loss of earning capacity during marriage."

The new Family Code, effective January 1, 1970, in Section 5.01(a) (3), makes essentially the same provision. The Texas Legislature, in 1967 (Acts 1967, 60th Leg., p. 736, ch. 309), has effectively removed and cut away many of the impediments previously placed on the wife by virtue of her status as a married woman. In enacting the statute, it was obviously the intention of the Legislature that the wife could recover for her own personal injuries in, at least a limited measure.

In Few v. Charter Oak Fire Insurance Company, 463 S.W.2d 424 (Tex.Sup.1971), our Supreme Court stated that in the past over-broad corrective legislation changing the definition of community property has been stricken down on constitutional grounds. However, that Court observed:

" * * * The 60th Legislature, in enacting Articles 4621 and 4626, avoided the constitutional difficulties arising from an attempt to modify legislatively the constitutional definition of community property. These statutes leave undisturbed the definition of community property, but more clearly define the managerial rights of each spouse * * *."

We think that the same reasoning and logic applies with respect to Art. 4615, V.A. C.S. This statute left undisturbed the definition of community property as set out in our Constitution, but more clearly defined a certain segment of property as being the separate property of the injured spouse. We are mindful that the Supreme Court,

in Arnold v. Leonard, 114 Tex. 535, 273 S.W. 799 (1925), held that a statute making rents and revenues from the wife's separate estate her separate property was unconstitutional, and by refusing a writ of error in Northern Texas Traction Co. v. Hill, 297 S.W. 778 (Tex.Civ.App., El Paso, 1927), approved the holding of the Court of Civil Appeals to the effect that Article 4615, Revised Statutes of 1925, providing that "all property or moneys received as compensation for personal injuries sustained by the wife shall be her separate property, except such actual and necessary expenses as may have accumulated against the husband for hospital fees, medical bills, and all other expenses incident to the collection of said compensation" was unconstitutional, as in contravention of Art. 16, § 15, of our State Constitution, Vernon's Ann.St.

In our opinion, there are substantial differences in the two statutes; under the 1925 statute, originally enacted in 1915, only the wife was affected; under the 1967 statute, the husband and wife are equally affected. Under the former statute, *all* compensation for damages sustained by the wife, including recovery for loss of earning power as well as compensation for destruction or damage to her physical body was made her separate property. Under the 1967 statute, *only* recovery for damage to the physical body of the injured spouse is made separate property, which injuries, in their broadest classification, include destruction, loss or impairment of a member of the body, disfigurement, and physical and mental pain and suffering, both past and future. All other damages sustained by the injured spouse remain community property. Loss of earning capacity is expressly excluded by the statute. Though medical expenses arising out of a spouse's injury (as well as the other spouse's loss of consortium) may be elements of recovery in a personal injury action in the broadest sense, they are not part of "*the* recovery awarded for personal injuries" as provided by the 1967 statute.

Furthermore, there are cases that hold that recovery for injury can be separate property. See Wright v. Tipton, 92 Tex. 168, 46 S.W. 629 (1898); Norris v. Stoneham, 46 S.W.2d 363 (Tex.Civ.App., Eastland 1932, n. w. h.). And, in Dickson v. Strickland, 114 Tex. 176, 206, 265 S.W. 1012, 1024 (1924), it was held that the salary to be paid Governor Miriam A. Ferguson, wife of James E. Ferguson, for her services as Governor of Texas, was her separate property; there, the Supreme Court reasoned that, if the husband by his wrong had deprived himself of any right to share such salary, the same would become his wife's separate estate.

Our construction of the 1967 statute leaves undisturbed the definition of community property as embodied in our Constitution and, in no way repudiates the holdings in Arnold v. Leonard, supra, and Northern Texas Traction Co. v. Hill, supra. The legislature has decided that one hundred per cent (100%) of the loss resulting to a spouse by virtue of damages to the physical body should not be lumped together and be treated as community property; any loss that is not measured by impairment or diminution of earning power should be denominated separate property. It must be conceded by all that, if either party owns a chattel at the time of the marriage and, if, thereafter, the chattel is injured by a third party and a recovery is awarded for such damage or injury, surely the amount of such monetary award will be the separate property of the spouse that owned the chattel. There is no difference in a situation where the physical body of the spouse is substituted for the chattel; there, the spouse brings a sound body into the marriage; it is damaged as a result of actionable misconduct or negligence of a third party; any monetary recovery for the loss or damage to the affected member of the body (excluding damages for loss of earning capacity, loss of consortium, and recovery for medical expenses) should be treated as the separate property of the spouse who sustained the injury.

We presume that the legislature knew, in 1967, when it enacted Art. 4615, V.A.C.S., that damages recovered for all of the wife's personal injuries were community property, and that she would not be entitled to any recovery therefor if her husband was convicted of contributory negligence in the accident causing such injuries. The Legislature also knew that, in order for either spouse to recover for personal injuries sustained in an accident where the other spouse was contributorily negligent, a special statute would be required, and that in the enactment of the statute it was intended to do just what the language expressed; that is, to make the money awarded to each spouse for injury to his or her body the separate property of the injured spouse. Until such time as this statute is declared unconstitutional, if ever, a spouse in the absence of any finding of primary or contributory negligence on his or her part, should be able to recover from the driver of the other car as any other person could recover despite the contributory negligence of the spouse-driver of the car in which he or she was riding. Robinson v. Ashner, 364 S.W.2d 223 (Tex.Sup. 1963); McKnight, Matrimonial Property, 22 Sw.L.J. 129, 131 (1968).

As to the cause of action relating to loss of earning capacity, if any, sustained by Lydia Franco and as to loss, if any, of capacity to perform household duties of Lydia Franco, we hold that the wife is in privity with her husband on these elements which are part of the community estate and the finding of contributory negligence of the husband, Rafael Franco, bars any recovery therefor. However, we further hold that the contributory negligence of Rafael Franco in the collision of July 4, 1969, is not imputed to Lydia Franco, his wife, insofar and only insofar as the personal injuries sustained by her are concerned. We also hold that any recovery for such personal injuries sustained by Lydia Franco will be her separate property.

We now examine the record to determine whether or not there is merit in the aforesaid ninth point of error. Since this point presents a question of fact, we must weigh all of the evidence pertaining to such finding, including the evidence which supports the finding and also evidence contrary thereto. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951).

Special Issue No. 12, as submitted by the trial court and as answered by the jury, reads as follows:

"What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate Lydia Franco for her injuries, if any, which you find from a preponderance of the evidence resulted from the occurrence in question?

"You may consider the following elements of damage, if any, and none other:

a. Physical pain and mental anguish in the past.

b. Physical pain and mental anguish which, in reasonable probability, she will suffer in the future.

c. Physical impairment in the past other than loss of earning capacity in the past.

d. Physical impairment, which in reasonable probability, she will sustain in the future other than loss of earning capacity in the future.

Answer in dollars and cents, if any.

Answer: –0–."

The issue was submitted without objection by either plaintiffs or defendants.

Lydia Franco testified that she was in good health before the accident; that she was rendered unconscious by the force of the impact; and, that following the accident she suffered pain in her right side, in her stomach, to her right eye, to her head, and to her neck. In addition, she testified that her right hand and right leg would become numb on occasion and

that, after the collision, she was afflicted with double vision in her right eye.

Dr. Antoni testified that, upon admission to the hospital, Lydia Franco was given emergency treatment by Dr. Holt and that he (Dr. Antoni) first saw her a few hours after the accident; he further testified that she was in the hospital for thirteen days; she was unconscious for about forty-eight hours; she was in the intensive care unit for several days; she received a severe laceration on the back of her head, some six or seven inches in length, which was sutured by Dr. Holt; she suffered a severe concussion and showed a marked loss of muscular strength in her right arm, right leg and in the lower extremities of her right side: she also sustained multiple bruises to her chest; no bones were broken or fractured; however, on August 21, 1969, Dr. Antoni detected some atrophy in her right leg. In September 1969, he determined that she was suffering from a hernia, which he said could have been caused by the accident. Dr. Antoni further testified positively that her injuries were severe, that after she regained consciousness she had headaches, and that the lacerations on her head were very painful. He also testified that the pupil of her right eye was so dilated that he referred her to Dr. Tempesta, an ophthalmologist, for examination and treatment of the eye.

Dr. Rockwell, also an ophthalmologist, testified that he examined Lydia Franco a few days before trial and that he determined that she had sustained some degree of paralysis to a muscle in her right eye, that the paralysis was permanent and had been caused by trauma. He further testified that his conclusions were based on objective observations and findings, as well as upon what was related to him by Lydia Franco.

In order to uphold the jury finding in response to special issue 12, we would be required to hold that a preponderance of the evidence established that the injuries sustained by Lydia Franco did not result in physical impairment and that these injuries, including the laceration on her head and the bruises to her chest, all of which required medical treatment and care that resulted in reasonable expenses of $2,212.-93, as found by the jury in answer to special issue 13, were totally unaccompanied by any physical pain. We are unable to so hold on the evidence presented by this record. We believe, and so hold, that the findings of the jury on special issue 12 that there was no compensable pain on the part of Lydia Franco and that she did not sustain any compensable physical impairment are so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. Lowery v. Berry, 153 Tex. 411, 269 S.W.2d 795 (1954); Gallegos v. Clegg, 417 S.W.2d 347 (Tex.Civ.App., Corpus Christi 1967, wr. ref. n. r. e.), and cases therein cited; Bittick v. Ward, 448 S.W.2d 174 (Tex.Civ. App., Beaumont 1969, wr. ref. n. r. e.); Taylor v. Dunn, 453 S.W.2d 521 (Tex.Civ. App., Waco 1970, n. w. h.).

We are not here presented with a question of inadequacy of the amount awarded as damages, but whether the award of zero dollars for physical pain was proper. The applicable rule is stated in Edmondson v. Keller, 401 S.W.2d 718 (Tex.Civ.App., Austin, 1966, n. w. h.), at page 720, as follows:

> "The amount of damages is largely within the jury's discretion. However, they must award something for every element of damage resulting from an injury * * *."

We apply that rule here. The ninth point is sustained.

Our disposition of this case makes it unnecessary for us to consider plaintiffs' tenth and eleventh points of error.

We affirm the judgment as to Rafael Franco, since the jury convicted him of contributory negligence proximately causing the collision in question, which preclude a recovery on the cause of action

and in the rights asserted by him, but we reverse the judgment of the trial court as to Lydia Franco and remand the cause for new trial as to her.

Affirmed in part and reversed and remanded in part.