539 P.2d 566

**Betty ROGERS, Plaintiff-Appellant,**

v.

**YELLOWSTONE PARK COMPANY, a corporation, Defendant-Respondent,**

and

**Peter Rogers, Defendant.**

**No. 11299.**

Supreme Court of Idaho.

July 25, 1974.

On Rehearing May 5, 1975.

Nels T. Sahl, St. Anthony, for plaintiff-appellant.

E. W. Pike, Albaugh, Bloem, Smith & Pike, Idaho Falls, for defendant-respondent.

McFADDEN, Justice.

Betty Rogers, the plaintiff-appellant, instituted this action under the provisions of I.C. § 49–1404[1] seeking damages for personal injuries arising out of a one-car accident which occurred on March 29, 1970, near Ashton, Idaho.

In her complaint, appellant alleged the following facts. She was a passenger in a car owned by the Yellowstone Park Company, the defendant-respondent, and operated by Peter Rogers, her husband who was employed by the respondent company.

Respondent Yellowstone Park Company gave permission to her husband to operate the vehicle on this particular business related trip from San Francisco to Yellowstone Park, and agreed that appellant and her son, an infant, could accompany her husband on this trip. Defendant Peter Rogers drove the company car continuously on the trip, without rest or relief, except for brief stops. Appellant's husband, while driving, dozed or fell asleep and the car left the highway. Appellant alleged her husband's conduct constituted gross, wanton and reckless disregard of the lives of others and his negligent acts and omissions caused the accident and seriously injured her. She alleged she sustained medical and hospital expenses in the approximate amount of $4,200, and alleges future medical expenses for her injuries will be $10,000. She alleged damages for incidental expenses, loss of earnings and pain and suffering in the amount of $50,000.

Appellant, while naming both the Yellowstone Park Company and her husband as defendants in the action, obtained service of summons and complaint on the Yellowstone Park Company, but not on her husband. The respondent in its separate answer denied all allegations of the complaint, and alleged as affirmative defenses the following. Peter Rogers was not authorized to carry passengers in the company vehicle; a necessary party, i. e., Peter Rogers, was not joined as a party plaintiff; any recovery by appellant would be community property for herself and her husband, and that her husband was an in-

---

1. "49–1404. Owner's tort liability for negligence of another—Subrogation.—1. Responsibility of owner for negligent operation by person using vehicle with permission—Imputation of negligence. Every owner of a motor vehicle is liable and responsible for the death of or injury to a person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, expressed or implied, of such owner, and the negligence of such person shall be imputed to the owner for all purposes of civil damages.

"2. * * *

"3. Operator to be made party defendant—Recourse to operator's property. In any action against an owner on account of imputed negligence as imposed by this section the operator of said vehicle whose negligence is imputed to the owner shall be made a party defendant if personal service of process can be had upon said operator within this state. Upon recovery of judgment, recourse shall first be had against the property of said operator so served."

"4. * * * *."

dispensable party plaintiff. Respondent by way of cross-claim against Peter Rogers alleged it was entitled to indemnification from him for any sums it might have to pay appellant by reason of this action.[2]

Respondent filed its motion for summary judgment, contending that a wife living and cohabitating with her husband cannot recover from her husband's employer for the husband's negligent acts, since any recovery by the wife would be community property which would inure to the benefit of the husband tortfeasor. The motion for summary judgment was based on a deposition of appellant taken by respondent, certain answers to interrogatories, admissions, and affidavits. The trial court concluded that under the present interpretation of Idaho law, any recovery by appellant would be community property of herself and her husband, thus inuring to his benefit. The trial court granted the motion for summary judgment, from which judgment appellant has taken this appeal.

Presented for resolution by this court is the fundamental issue of whether the appellant wife may maintain an action for personal injuries against her husband and his employer for her husband's negligence during the course and scope of the husband's employment. Appellant relies heavily on the case of Lorang v. Hays, 69 Idaho 440, 209 P.2d 733 (1949), an action involving a tort committed by a husband on his wife, as authority that such an action may be maintained. Appellant has also cited cases from other community property jurisdictions where actions were allowed by one spouse against the other for negligent torts.

Respondent on the other hand, contends that any recovery by a wife, for damages such as are claimed in this action, is community property of herself and her spouse

barring the action as held by the trial court.

Respondent points to a number of cases decided prior to Lorang v. Hays, supra, where this court held that damages for personal injuries to a spouse were community property. Giffen v. City of Lewiston, 6 Idaho 231, 55 P. 545 (1898); Lindsay v. Oregon Short Line RR Co., 13 Idaho 477, 90 P. 984 (1907); Labonte v. Davidson, 31 Idaho 644, 175 P. 588 (1918); Muir v. City of Pocatello, 36 Idaho 532, 212 P. 345 (1922); Sprouse v. Magee, 46 Idaho 622, 269 P. 993 (1928) [dictum]; Swager v. Peterson, 49 Idaho 785, 291 P. 1049 (1930). See also the following two cases decided subsequent to Lorang v. Hays, supra, Doggett v. Boiler Engineering & Supp. Co., 93 Idaho 888, 477 P.2d 511 (1970) [concerning survival of claims for personal injuries], and Clark v. Foster, 87 Idaho 134, 391 P.2d 853 (1964). In each of those cases a spouse instituted an action against a third party defendant without joining the husband as a party. Without exception, the court did not examine the nature of the interest damaged but assumed the recovery to be community property. None of these involved the issue of one spouse suing the other for damages arising out of the other's negligence. The principal issue in those cases was whether the proper parties were before the court, and the court held that since the husband was the manager of the community property under I.C. § 32–912[3] he was a necessary and proper party to bring an action belonging to the community.

Respondent in support of its position that the trial court acted properly in granting the summary judgment also refers to an annotation pertaining to actions by one spouse against another. Annot. 43 A.L.R. 2d 632 (1955). However, appellant coun-

---

2. No issue regarding the Idaho Guest Statute, I.C. § 49–1401, was presented, nor do the parties contend that the law of any other jurisdiction is involved.

3. I.C. § 32–912 has been amended by 1974 S.L., Ch. 194, to provide for both spouses to

have equal management and control of community property except that neither spouse may sell or convey community real property unless both join the conveyance nor may either spouse incur community debts and obligate the other's separate property without the other's written consent.

ters this citation, first pointing out the policy arguments set out in the annotation to the effect: (1) maintenance of an interspousal immunity rule is necessary for the preservation of domestic peace; (2) its abrogation would encourage litigation which, at least where a spouse is protected by insurance, might be collusive; and (3) any change in the rule should be for the legislature. Appellant contends these policy arguments are without merit and refers to Prosser, Law of Torts, § 122, p. 863 (4th ed., 1971), where the author states concerning such traditional arguments,

"Stress has been laid upon the danger of fictitious and fraudulent claims, on the very dubious assumption that a wife's love for her husband is such that she is more likely to bring a false suit against him than a genuine one; and likewise the possibility of trivial actions for minor annoyances, which might well be taken care of by finding consent to all ordinary frictions of wedlock—or at least assumption of risk! The chief reason relied upon by all these courts, however, is that personal tort actions between husband and wife would disrupt and destroy the peace and harmony of the home, which is against the policy of the law. This is on the bald theory that after a husband has beaten his wife, there is a state of peace and harmony left to be disturbed; and that if she is sufficiently injured or angry to sue him for it, she will be soothed and deterred from reprisals by denying her the legal remedy—and this even though she has left him or divorced him for that very ground, and although the same courts refuse to find any disruption of domestic tranquility if she sues him for a tort to her property, or brings a criminal prosecution against him. If this reasoning appeals to the reader, let him by all means adopt it." Prosser, Law of Torts, § 122, p. 863 (4th ed., 1971).

See also, Klein v. Klein, 58 Cal.2d 692, 26 Cal.Rptr. 102, 376 P.2d 70 (1962).

Implicit in respondent's argument is that the judicial system is inadequate to safeguard against collusion in tort actions between spouses. We reject this contention, for courts in this state presently weed out fraud and collusion in other cases not involving actions between spouses. We find nothing unusual or peculiar in interspousal suits to frustrate the capability of the judicial system to avoid or anticipate such abuses. See, Brooks v. Robinson, 284 N.E.2d 794 (Ind.1972). It is difficult to perceive how a personal action would disrupt the tranquility of the marital state to any greater degree than would actions in partition, ejectment or for contesting of wills, all of which actions now may be maintained by a wife against her husband when such actions involve her separate property. I.C. § 5–304; I.C. § 32–904. See, Salisbury v. Spofford, 22 Idaho 393, 126 P. 400 (1912), and Boggs v. Seawell, 35 Idaho 132, 205 P. 262 (1922), both being cases where a wife brought an action involving separate property without her husband being joined. It is the conclusion of the court that the policy arguments referred to by respondent in support of its position are fully answered by the quotation from Prosser quoted above.

Aside from a consideration of the nature of the right sought to be protected in this instant action, we find no valid reason for the retention of interspousal immunity in an action of this kind.

We now come to the critical issue concerning the nature of the interest which appellant by this action seeks to protect. If one relies on the cases previously cited by respondent involving tort claims against third party tort-feasors, it is clear that there is only one answer, i. e., appellant's recovery for damages suffered in the automobile accident would be community property and this present action would be barred. However, without exception none of those cases considered the character of the right harmed for which the damages were sought.

Separate property is defined by statute to include:

"All property of either the husband or the wife owned by him or her before marriage, and that acquired afterward either by gift, bequest, devise or descent, or that which either he or she shall acquire with the proceeds of his or her separate property, by way of moneys or other property, shall remain his or her sole and separate property." I.C. § 32–903.

Community property, on the other hand, includes

"All other property acquired after marriage by either husband or wife, including the rents and profits of the separate property of the husband and wife, is community property * * *." I.C. § 32–906.

The cases previously referred to herein cited by respondent relied on the concept that all property *acquired during marriage* was community property, and that any recovery for damages for personal injuries was "property acquired after marriage" but not acquired by "gift, bequest, devise or descent." Hence, such recovery was community property. However, we believe the correct concept is first to consider the nature of the right or interest invaded or harmed by the negligence of a defendant, and based on a determination of the nature of this right, then to characterize the damages recovered in relation to the right violated. Thus, the character of any judgment in this type of case as separate or community would take its character from the nature of the right violated. See, McKay, Community Property, § 398, p. 286 (2d ed. 1925).

When a couple marry they bring to the marriage not only their property, but also themselves as individuals. While they enter into common bonds, still they are entitled to maintain certain individual rights. One of those rights is that of personal security and freedom from harm to one's person from the spouse. Soto v. Vandev-

enter, 56 N.M. 483, 245 P.2d 826 (N.M. 1952). Any physical injury to a spouse, and the pain and suffering therefrom is an injury to the spouse as an individual. Compensation by way of damages for such an injury would partake of the same character as that which has been injured or has suffered loss. See McKay, Community Property, § 398, p. 268 (2d ed., 1925); DeFuniak & Vaughn, Principles of Community Property, § 82, p. 201 (2d ed. 1971). Although not articulated in terms of *personal security,* nonetheless, in Lorang v. Hays, 69 Idaho 440, 209 P.2d 733 (1949), this court recognized the right of a wife to maintain an action against her husband for a tort committed while the parties were married. Even though at the time the action was brought the parties had separated, this court stated

"We, therefore, conclude that a cause of action for damages to the person or character of a married woman, which accrue while she is living separate and apart from her husband, is 'an accumulation,' is her separate property; that the husband is not a necessary party plaintiff and is not entitled to any of the recovery. This rule is particularly applicable where *the husband is himself the wrongdoer.*" 69 Idaho at 446, 209 P.2d at 735.

Courts in other community property jurisdictions have similarly recognized the right of a spouse to maintain a tort action for a personal injury and to recover damages as separate property. In Soto v. Vanderventer, 56 N.M. 483, 245 P.2d 826, 832, 833 (N.M.1952), 35 A.L.R.2d 1190 (1954) [see, Annot. 35 A.L.R.2d 1199 (1954)], the New Mexico Supreme Court held:

"We are of the opinion that reason, justice and a fair interpretation of our community statute, construed either in light of the common or Spanish law, require that we hold the cause of action for the personal injury to the wife, and for the resultant pain and suffering, belongs to the wife, and that the judgment

and its proceeds are her separate property. She brought her body to the marriage and on its dissolution is entitled to take it away; she is similarly entitled to compensation from one who has wrongfully violated her right to personal security."

Flores v. Flores, 84 N.M. 601, 506 P.2d 345 (N.M.Ct.App.1973). See, Fredrickson & Watson Const. Co. v. Boyd, 60 Nev. 117, 102 P.2d 627 (1940); Self v. Self, 58 Cal. 2d 683, 26 Cal.Rptr. 97, 376 P.2d 65 (1962); Klein v. Klein, 58 Cal.2d 692, 26 Cal.Rptr. 102, 376 P.2d 70 (1962); Freehe v. Freehe, 81 Wash.2d 183, 500 P.2d 771 (1972).[4] Cf., Windauer v. O'Connor, 13 Ariz.App. 442, 477 P.2d 561 (1970); Harkness v. Louisiana I. N. W. R. Co., 110 La. 822, 34 So. 791 (1903); Franco v. Graham, 470 S.W.2d 429 (Tex.Civ.App.1971). See, generally, Annot. Spouse's cause of action for negligent personal injury as separate or community property, 35 A.L.R.2d 1199 (1954).

It is the conclusion of this court that the appellant is entitled to pursue her remedy for damages arising out of the alleged accident, notwithstanding that the tortfeasor was her husband and was named as a party defendant. See, Lorang v. Hays, supra, where this court stated:

"Construing our constitution and statutes as a whole, it seems to us plainly manifest that the legislative intent to remove the shackles of the common law rules as to rights of a married woman, under the circumstances presented here, is clearly apparent.

"In Idaho a married woman has a legal status of her own. She is not submerged in the identity of her husband.

"We are unable to perceive where public policy or society or the sacred relations of marriage are in anywise protected by denying a remedy open to all persons. We, therefore, conclude that under the facts alleged, the plaintiff has a right to maintain the action against her former husband even though the tort complained of was committed during coverture." 69 Idaho at 448, 209 P.2d at 737.

One additional issue is presented by this appeal concerning what damages would be allowable to a spouse in an action such as this.

In Freehe v. Freehe, 81 Wash.2d 183, 500 P.2d 771 (1972), the Supreme Court of Washington held that a married woman could maintain an action for a personal injury caused by the negligence of her husband. Therein that court dealt with the issue of the scope and nature of damage recovery. That court stated:

"In more direct response, this argument mistakenly assumes that courts are incapable of fashioning a remedy appropriate to a newly recognized enforceable claim for relief. For the simple reason that no enforceable claim has heretofore been recognized in this area, none of our prior cases allocating personal injury recoveries can be said to be on point. That is, we are not here concerned with the established rule that recovery for injuries to a married person by a third party tort-feasor is community property. Nor does any statute expressly deal with the allocation of damages as between the spouses in such an action. In these circumstances, it is for the court to fashion an appropriate remedy. We think that justice would best be served in these cases by a rule that compensates the injured spouse without unduly benefitting the tort-feasor spouse. See discussion 38 Wash.L.Rev. 374–379 (1963). We think

---

4. In Self v. Self, supra, the Supreme Court of California allowed a recovery by a wife for an intentional tort inflicted upon her by her husband, overruling two previous cases. To a certain extent that court relied upon legislative enactments. In Klein v. Klein, supra, the Supreme Court of California allowed a recovery by a wife against her husband for a negligent tort, as opposed to an intentional tort as in Self v. Self, supra. Idaho in Lorang v. Hays, supra, reached the same conclusion concerning intentional torts as the California court but did not have to rely on a special statute.

that these dual considerations are best served by the following formula: (1) Special damages, including established future specials, are recoverable by the community. These are actual, out of pocket expenses which are a community liability. The fact that the tort-feasor spouse is thereby spared his or her community share of these expenses is, we think, outweighed by the facts that these damages are strictly compensatory in nature, inuring directly to the benefit of the injured spouse, and that any reduction in the damages recoverable would most directly and harmfully affect the injured spouse. (2) General damages for loss of future earnings which would have constituted community property are recoverable in the fraction of one half, by the injured spouse, as his or her separate property. (3) General damages compensating for pain and suffering, emotional distress, etc., are fully recoverable and are the separate property of the injured spouse." 500 P.2d at 776, 777.[5]

▆▆▆ It is our conclusion that the Washington Supreme Court has established a workable rule concerning damages in this type of case, an action for personal injuries sustained by the wife. Therefore it is the conclusion of this court that appellant in this action is entitled to pursue her remedy for damages arising out of the accident alleged notwithstanding that she has named her husband as a party defendant. Appellant seeks recovery of special damages, including established future specials. She also seeks general damages for loss of future earnings, and also general damages as compensation for pain and suffering. Appellant is entitled to recover her special damage, including established future specials, as these are actual out of pocket ex-

penses which are a community liability. And the fact her spouse would be relieved of this financial burden is outweighed by the fact such damages are strictly compensatory in nature inuring to the benefit of the injured spouse. General damages for loss of future earnings which would be community property would be recoverable only in the fraction of one-half as the separate property of the injured spouse, and general damages for pain and suffering and emotional distress would be fully recoverable as the injured spouse's separate property.

The summary judgment is reversed and the cause remanded for further proceedings in conformity with this opinion. Costs to appellant.

DONALDSON and McQUADE, JJ., concur.

SHEPARD, Chief Justice (dissenting).

I respectfully dissent from the opinion of the majority for a number of reasons. I first disagree with the statement that "the critical issue" involves the characterization of whatever recovery may be made. The threshold question in this case is whether or not the long standing principle of common law commonly known as "interspousal immunity" should be overruled in Idaho.

It has been stated in connection with the doctrine of interspousal immunity "in view of the paucity of authority, the unsatisfactory and inconsistent character of the reasons advanced, the different and inconsistent treatment of husband and wife and parent and child, in several instances by the same court, and the changed economic conditions of the present day, the problem of a cause of action for personal injury should be considered an open question,

5. See, Soto v. Vandeventer, 56 N.M. 483, 245 P.2d 826, 832, 833 (N.M.1952); Flores v. Flores, 84 N.M. 601, 506 P.2d 345 (N.M.Ct. App.1973). See also, Fredrickson & Watson Const. Co. v. Boyd, 60 Nev. 117, 102 P.2d 627 (1940); Self v. Self, 58 Cal.2d 683, 26 Cal. Rptr. 97, 376 P.2d 65 (1962); Klein v. Klein, 58 Cal.2d 692, 26 Cal.Rptr. 102, 376 P.2d 70 (1962). Cf., Windauer v. O'Connor, 13 Ariz.App. 442, 477 P.2d 561 (1970); Harkness v. Louisiana I. N. W. R. Co., 110 La. 822, 34 So. 791 (1903); Franco v. Graham, 470 S.W.2d 429 (Tex.Civ.App.1971).

meriting a more careful and exhaustive analysis, a more critical appreciation of the factors involved, and a more rational treatment than it has received in the past."

In my judgment the majority opinion has not approached the threshold question with any analysis, critical appreciation or understanding of the factors involved.

The historical basis of the common law treatment of the relation of husband and wife is obscure but has several possible sources. A mixture of religion, the Bible and medieval metaphysics is suggested as one origination; a second is suggested as the paterfamilias of Roman law, and the third and perhaps most important is the natural law concept of the family as an informal unit of government. *See* McCurdy, Torts Between Persons and Domestic Relation, 43 Harvard L.Rev. 1030.

It is necessary to point out a number of matters of preliminary importance. Idaho, as distinguished from a number of other states, has enacted no legislation directly affecting this question nor has the majority opinion utilized statutory construction as a method to obtain its result. See cases collected 43 A.L.R.2d 632.

The mere fact that a doctrine has existed in the common law for many centuries does not in and of itself give any reason for its perpetration. At the same time the mere fact that a doctrine has been in existence for hundreds of years is no excuse to discard it as archaic and without merit to our society of today without at least a passing analysis as to its merit. Unfortunately the majority opinion does not indulge in such analysis.

In my judgment, contrary to the decisions of some courts, the problem has nothing to do with statutes commonly referred to as Married Women's Acts or what is today in the vernacular referred to as "women's lib." The doctrine of interspousal immunity prohibits not only a wife from suing her husband but a husband from suing his wife.

It is clear upon analysis that from time immemorial a husband and wife have legally been considered as a unit. Many other units are recognized by the law such as corporations, partnerships, voluntary associations and others. Persons who voluntarily enter into a particular relationship recognized by the law acquire certain rights and sacrifice others. By the entry into such relationship they render nonactionable many acts and/or omissions which without the relationship would be actionable. Conduct within a family differs from ordinary conduct since the members are in a common establishment and engaged in a common domestic enterprise.

The questions arising from a change in such relationship are voluminous and staggering. Just a few examples may suffice. To what standard of care are members of the family to be held? Is that standard the same that applied to one living outside the family relationship or is it something special? Is the standard of due care required of a wife in the preparation of food the same standard as one outside the family relationship? What of the standard of care of a husband to maintain a staircase? What of the doctrine of assumption of the risk? What of the doctrine of contributory negligence? What of the doctrine of comparative negligence? Does every touching against the will of the other constitute a battery? What of the right of privacy?

It is true that the courts in a minority of jurisdictions have permitted an action between spouses for a negligent tort. 43 A.L.R.2d 664-670. It is suggested that the dissent of Justice Harlan, joined by Holmes and Hughes, in Thompson v. Thompson, 218 U.S. 611, 31 S.Ct. 111, 54 L.Ed. 1180 (1910) had much influence in the establishment of the minority view. It should be noted, however, that many of those jurisdictions have abrogated the doctrine of interspousal immunity on the basis of some specific statutory provision. Contrary to the implication of the majority de-

cision, the abrogation by courts of interspousal immunity is a minority view and when adopted has been done so generally by divided courts.

As pointed out in the opinion of the majority the Idaho Court in the case of Lorang v. Hays, 69 Idaho 440, 209 P.2d 733 (1949) abolished the common law rule prohibiting a wife from maintaining an action against her husband for a *wilful tort*. The *Lorang* decision was specifically limited to the commission of an intentional tort by one spouse against the other. The majority decision then cites a statement from Prosser, Law of Torts, 4th ed. which supposedly dispenses with the doctrine of interspousal immunity upon the basis that it is based "on the bald theory that after a husband has beaten his wife, there is a state of peace and harmony left to be disturbed."

Although it may be heresy to disagree with the gospel according to Prosser, nevertheless if the good professor is actually suggesting that such statement justifies the abolition of interspousal immunity in negligence cases as distinguished from intentional torts I must confess my admiration at the sine qua non of non sequiturs. *See also* Smith v. Smith, 205 Or. 286, 287 P.2d 572 (1955). The glaring fallacy in the majority's utilization of Prosser and Lorang v. Hays, *supra,* is the illogical leap from intentional tort to negligence.

For additional discussion and comment both pro and con, *see,* Abrogation of Interspousal Immunity—An Analytical Approach, 19 DePaul L.R. 590 (1970); Hume, Intra-Familial Immunity, 17 Federation Ins. Counsel Quarterly 45 (1966); Comment, 11 Duquesne L.R. 719 (1973); Interspousal Immunity—A Policy Oriented Approach, 21 Rutgers L.R. 491 (1967); Hotes, Tort Actions Between Husband and Wife, 9 Clev.-Mar.L.R. 265 (1960); Garlich, Interspousal Tort Immunity, 8 Willamette L.J. 427 (1972); Intrafamily Litigation, 1970 Ins.Law J. p. 133.

Our society over the years has held to the belief that when a man and woman

marry they should and must expect and anticipate that during the marriage there will be events which between different persons might be classed as negligence. As between other persons such events might result in a cause of action for negligence. However, because society views a man and woman who have voluntarily entered into such marital relationship as a unit, such events do not give rise to a cause of action.

The instant case is couched in terms of negligence resulting from the operation of an automobile but that is only the instant case. The reason for the instant case may be that the family considered itself to be in "the good hands" of an insurance carrier. Such does not however answer the question as to where we go from here.

At the risk of appearing facetious, does the majority's decision anticipate legal action between husband and wife in the following logical extensions of the instant action:

The wife negligently waxes the floor causing it to be slippery and giving no warning to the husband who returns home late at night, falls on the floor and injures himself; the wife negligently serves spoiled food to the husband causing sickness and loss of work to the husband; the husband negligently fails to maintain a garage door which falls, strikes the wife and renders her a quadriplegic.

Is the decision of the majority herein limited to the abrogation of interspousal immunity for personal injuries only, or is it to be extended to claims for damages of property? For example, does the majority seriously contemplate action if a wife while dusting were to negligently knock over and break a $500 vase which was given to the husband as a family heirloom and constitutes his separate property; consider the situation of the husband negligently having an automobile accident totally destroying the $4,000 community property family automobile.

While the preceding parade of horribles may appear facetious, it nevertheless dem-

onstrates questions which the majority opinion has not faced and which should be considered in the proposed abolition of a doctrine so fundamental to the common law.

I would hold that the threshold question as to the abolition of the doctrine of interspousal immunity should be answered in the negative. The process used by the majority herein and in numerous other cases, see Klein v. Klein, *supra,* and Frehee v. Frehee, *supra,* utilizes an age-old technique; the destruction of strawmen. We are told that the only support for the doctrine of interspousal immunity is, 1. the fear of collusion and fraud between spouses to mulct insurance companies; 2. perpetuation of domestic tranquility. Professor Prosser, various other courts and the majority herein then set forth to destroy the two strawmen and conclude that since those are the only reasons for the perpetuation of the doctrine it should be abolished. I suggest such reasoning is fallacious in the extreme and furnishes no answer to the threshold question of whether four hundred years of doctrine of the unitary aspect of husband and wife should be abolished. I suggest also that the majority must in the future answer the question faced by other courts who have abolished interspousal immunity and who have subsequently and logically been required to abolish the immunity between parent and child for negligent torts. *See* Hume, Intra-Familial Immunity to Suit, 17 Federation Ins. Counsel Quarterly 45 (1966); Hebel v Hebel, 435 P.2d 8 (Alaska 1967); 41 A.L. R.3d 904.

Having disposed of the threshold question of the abolition of the doctrine of interspousal immunity in a most cavalier fashion the majority opinion then illogically leaps to a consideration of the recovery, and if it is to be characterized in terms of separate property. The majority omits any discussion as to what property is to be liable for the torts of the guilty spouse. The majority decision does not answer such questions as:

If the tortious act was committed in the furtherance of the community, would the community property be liable to pay the money judgment to the wife as her separate property? Perhaps the majority opinion is to be taken as ruling that damages for the tortious acts of a spouse could be recovered only from the separate property of the tortfeasor spouse. What of the dilemma which is posed if the spouse has no separate property? If the community property is to be liable to pay the sum of money to a wife as her separate property it would appear that the mathematics of computing a fair recovery are insurmountable. If the community property is used to pay the one-half loss of future earnings of the wife to her as her separate property then she is actually paying one-half of her own damages by virtue of her one-half ownership of community property. As a result the wife has actually only gained one-fourth of the amount of her general damages for loss of future earnings. I believe it obvious that such computations soon reach the point of absurdity.

As a result of the above discussion one might be tempted to believe that the only reason for the abrogation of the doctrine of interspousal immunity is to allow one spouse to recover against an insurance carrier.

As stated by Brennan, J., in Hosko v. Hosko, 385 Mich. 39, 187 N.W.2d 236 (1971)

> "Interspousal tort litigation can hardly be called adversary. It is more like a joint venture to collect from the insurance company.
>
> \*   \*   \*   \*   \*   \*
>
> "Married tempers often fly. So do pots, pans, fists and worse. Apologies and caresses will no longer be the only available balm. In Michigan at least, we can well envision the family donnybrook ending with the husband calling his insurance agent, the wife calling her lawyer and both entertaining visions of better days ahead."

The common law for hundreds of years has held to the doctrine that a husband and wife are a unit for certain purposes in the law. From that concept sprang the concept of interspousal immunity for tortious conduct. Other doctrines that sprang from the same unitary concept are equally important. They may not testify against each other. Under most circumstances they have a duty of support each toward the other, and even upon a divorce a part of those duties may be continued. In this state neither can alienate the real property of the community without the consent and the execution of the other. Although examples are endless, these few may suffice.

Many years ago Harlan Fisk Stone, The Common Law in the United States, 50 Harvard L.Rev. 4, commented:

"Law performs its function adequately only when it is suited to the way of life of a people. With social change comes the imperative demand that law shall satisfy the needs which change has created, and so the problem, above all others, of jurisprudence in the modern world is the reconciliation of the demands, paradoxical and to some extent conflicting, that the law shall at once have continuity with the past and adaptability to the present and the future. * * *

"We are coming to realize more completely that law is not an end, but a means to an end—the adequate control and protection of those interests, social and economic, which are the special concern of government and hence of law; that that end is to be attained through the reasonable accommodation of law to changing economic and social needs, weighing them against the need of continuity of our legal system and the earlier experience out of which its precedents have grown; that within the limits lying between the command of statutes on the one hand and the restraints of precedents and doctrine, by common consent regarded as binding, on the other, the judge has liberty of choice of the rule which he applies and that his choice will rightly depend upon the relative weights of the social and economic advantages which will finally turn the scales of judgment in favor of one rule rather than another."

So in the case at bar, I believe this Court is faced with the problem of determining whether the doctrine of interspousal immunity serves the need of "continuity of our legal system" or whether it no longer serves the needs of our society, admittedly vastly changed from that in existence at the time of the adoption of the doctrine.

Admittedly the relationship between husband and wife has changed and continues to undergo massive change. We are told that one out of every three marriages ends in divorce. We can only speculate of the percentage of the remainder which exist in name only. The family unit, however, is still generally considered to be the key to the survival of our society and civilization. While I do not accuse the majority of an intent to destroy the family, I believe it obvious that the decision of the majority today contributes nothing to the need for the stability of the family relationship in today's society.

I suggest that the decision of the majority today will have results and consequences which will reach far beyond those envisioned in the humorous comments of Professor Prosser regarding interspousal harmony and the bland assumption that the doctrine of interspousal immunity serves and protects only insurance carriers.

BAKES, Justice (dissenting):

In addition to the reasons expressed by Chief Justice Shepard in his dissent, I wish to add my objection to the analysis given to the application of I.C. § 32–906 by the majority opinion. The majority view skirts the statute by stating, "We believe the correct concept is first to consider the nature of the right or interest invaded" in determining the nature of the recovery. Then, relying upon the cliché spawned by the New Mexico Supreme Court—"She

brought her body to the marriage and on its dissolution is entitled to take it away"—concludes that negligent injury by one spouse to another results in a claim by the injured spouse which is that spouse's own separate property.

If the development of the law is going to be based upon clichés rather than reason, at least those clichés should be accurate. Even with today's high divorce rate most marriages still are dissolved by death and as a result the body is entirely consumed in keeping the marital vows. Even where there is a divorce, it is certainly unrealistic to assume that the divorced party several years after the marriage gets back the same body that he or she brought to the marriage. To be more accurate, the cliché should at least state that "upon its dissolution she is entitled to take it away—reasonable wear and tear excepted." While reasonable wear and tear would not require one spouse to tolerate intentional physical abuse from the other, as this Court said in Lorang v. Hays, 69 Idaho 440, 209 P.2d 733 (1949), the decisions of this Court have uniformly held that negligent conduct such as excessively slick waxed floors, a husband's tools lying on the stairs, bad cooking, and even the husband's negligent driving (which could consist of his paying too much attention to his passenger wife), have always been part of the "reasonable wear and tear excepted." The statutes enacted by the legislature and the consistent line of authority from this Court deserve more consideration than being brushed aside by an inaccurate cliché.

And what of the future? The majority opinion sounds like it will only apply to negligent automobile accident cases, which is another way of saying that the action is limited to situations where the judgment will be paid by an insurance company. However, if the doctrine of inter-spousal immunity is waived there, and the recovery is the separate property of the injured spouse, then there is no logical reason to preclude recovery in all types of negligence actions, and even tort cases such as strict liability, invasion of privacy, etc., where no negligent conduct may be involved at all. The only rational distinction for not including these other types of tort actions in the sweeping scope of the majority opinion is the general absence of insurance to cover the liability. Viewed in this way, the majority opinion appears for what it really is, a thinly disguised assault upon liability insurance carriers. That's a lot of mileage to get out of one inaccurate cliché.

## ON REHEARING

McFADDEN, Justice.

After reviewing the dissenting opinions and the arguments raised on re-hearing, we adhere to our previous decision.

On rehearing, the respondent asserts that this case should be given prospective application only. Under the rule of prospective application, "a decision is effective only in future actions, and does not affect the rule of law in the case in which the new rule is announced". *Thompson v. Hagan*, 96 Idaho 19, 523 P.2d 1365, 1371 (1974). The other two approaches to the question of the applicability of this decision to past, present and future litigation are the traditional rule and the modified prospective rule. The traditional rule holds that a decision is applicable to both past and future cases. *Thompson v. Hagan, supra*, p. 1371. With the modified prospective rule, "the new decision applies prospectively and to the parties bringing the action resulting in the new decision; or, to the parties bringing the action and all similar pending actions". *Thompson v. Hagan, supra*, p. 1371.

█ In determining which rule to apply, three factors must be considered—the purpose of the decision, reliance on the prior rule of law, the effect upon the administration of justice. *Thompson v. Hagan, supra*, p. 1371, 523 P.2d 1365. The purpose of abrogating the doctrine of interspousal immunity is to allow a spouse to maintain an action for damages caused by the other spouse; this purpose would be best served by applying this case to past and present

actions. Regarding the reliance factor, insurance companies have probably relied upon the doctrine in establishing their premium rates. Analyzing the effect of this decision upon the administration of justice, we conclude that the effect of the abrogation of the doctrine of interspousal immunity will be negligible as other states have not experienced a noticeable increase in litigation. *Accord, Richard v. Richard*, 300 A.2d 637, 641 (Vt.1973); *Freehe v. Freehe*, 81 Wash.2d 183, 500 P.2d 771 (1972); *Klein v. Klein*, 58 Cal.2d 692, 26 Cal.Rptr. 102, 376 P.2d 70 (Cal.1962).

After evaluating these factors, we conclude that the modified prospective rule should be applied to this case. The decision abrogating the doctrine of interspousal immunity applies to this action, to all actions pending on the date this decision becomes final, and to all actions arising thereafter. See, Appellate Rule 45.

McQUADE, C. J., and DONALDSON, J., concur.

SHEPARD and BAKES, JJ., concur in the opinion on rehearing regarding prospective application, but continue to adhere to their original dissent.